LANIER, Judge.
This action is a suit by a police officer seeking judicial review of an administrative decision rendered by the Baton Rouge Fire and Police Civil Service Board (Board). La. Const, of 1974, Art. X, § 16 et seq. The employment of the police officer was terminated by the Chief of the Baton Rouge City Police Department (Department) for improper personal behavior and disrespect for superiors by preparing and/or disseminating racially and sexually offensive cartoons in violation of Articles 301 and 601 of the Rules and Regulations of the Department[1] and La.R.S. 33:2500. The police officer applied to the Board for a hearing. La.R.S. 33:2501(A), (B) and (C). The Board reversed the officer’s termination and substituted a 90 day suspension, without pay in its place. The police officer appealed to the district court. La.R.S. 33:2501(E). The district court affirmed the decision of the Board. The police officer took this devolu-tive appeal.
FACTS
Because the Board lost the tapes of the testimony given at the hearing held before it, the parties have stipulated the facts, in pertinent part, as follows:
1. Jimmie D. Normand served as a police officer for the City of Baton Rouge until his termination effective September 18, 1987.
2. Jimmie D. Normand was notified of his termination by letter dated September 18, 1987 from Chief Wayne R. Rogil-lio.
3. Jimmie D. Normand produced all or portions of the cartoons.
4. Jimmie D. Normand timely appealed his dismissal to the Baton Rouge Fire and Police Civil Service Board.
5. The Board convened a hearing of the appeal on Jimmie D. Normand. The hearing was concluded on January 19, 1988.
6. The Board reinstated Jimmie D. Normand, but substituted a 90 day suspen *1125 sion without pay in lieu of the termination.
7. Jimmie D. Normand appealed to this Court from the decision of the Board.
8. Chief Rogillio testified that the nature and content of the cartoons produced was the primary motivating factor in the dismissal.
9. Jimmie D. Normand admitted to the Internal Affairs investigators that he had produced all or portions of these cartoons.
10. The uncontradicted testimony at the hearing established that other officers had produced and circulated similar satirical cartoons.
11. The uncontradicted testimony was that others on the shift contributed ideas and comments that were incorporated into the various cartoons.
12. Jimmie D. Normand drafted and distributed a cartoon critical of himself.
13. Jimmie D. Normand testified he prepared the series of cartoons in an attempted expression of humor; not as personal attacks; as expressions of his personal opinions, with other police officers as the intended audience; as expressions of his dissatisfaction over how he perceived that a favored few got the easy jobs; as expressions of his beliefs that certain officers were given the most difficult assignments in an effort to get them to resign; with no intent to promote racism.
14. Certain officers testified they were offended by the cartoons, found them unprofessional and defamatory, while others testified they found them to be funny, satirical comments on police life in the Baton Rouge Police Department.
FIRST AMENDMENT PROTECTION
(Appellant’s Assignments of Error 1, 2 and 3)
Normand contends the trial court erred in failing to recognize and uphold his constitutional right to express his opinions in the form of political cartoons and satire. He asserts the disciplinary action taken against him infringed upon his constitutional right to free speech and prays that the disciplinary action taken be reversed and the records thereof expunged from his personnel records.
A public employee may not be fired or disciplined for exercising a constitutional right. Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). However, all speech by a public employee is not constitutionally protected by the First Amendment. Whether the speech of a public employee is constitutionally protected is determined by balancing the interest of the employee, as a citizen, in commenting upon matters of public concern against the interest of the government (national, state or local), as an employer, in promoting the efficiency of the public services it performs through its employees. Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Further, in McMullen v. Carson, 754 F.2d 936, 939-940 (11th Cir.1985) appears the following:
The Supreme Court has recognized that law enforcement agencies are qualitatively different from other Government branches. Kelley v. Johnson, 425 U.S. 238, 245-46, 96 S.Ct. 1440, 1444-45, 47 L.Ed.2d 708 (1976). See also Waters v. Chaffin, 684 F.2d 833, 839 n. 12 (11th Cir.1982); Leonard v. City of Columbus, 705 F.2d 1299 (11th Cir.1983). The First Amendment does not protect personal behavior in the law enforcement context to the same extent that it does in other areas of Governmental concern. The need for high morale and internal discipline in a police force led this Court to hold that “a reasonable likelihood of harm generally is ... enough to support full consideration of the police department’s asserted interests in restricting its employees’ speech.” Waters, 684 F.2d at 839 n. 12.
The proper method for conducting this balancing of interests is set forth in McEvoy v. Schoemaker, 882 F.2d 463, 465-466 (10th Cir.1989) as follows:
In Mount Healthy City School Dist. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977), the Supreme *1126 Court established a three prong test to determine whether a governmental entity’s adverse employment decision concerning an employee contravened that employee’s first amendment guarantees. The employee must initially show as a matter of law that the speech at issue deserves constitutional protection. This question involves two steps, only the first of which we are concerned with in this instance: (1) whether the speech constitutes a matter of public concern, and (2) whether the employee’s interest in making such statements outweighs “the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.” Pickering, 391 U.S. at 568, 88 S.Ct. at 1734. If the court deems the speech worthy of protection, the employee then must prove as a factual matter that the protected speech was a “motivating factor” in the detrimental employment decision_ Lastly, if the employee establishes his case, the employer must be given an opportunity to persuade the jury that it would have reached the same decision in the absence of the protected activity....
Whether McEvoy’s letter addressed a matter of public concern depends on its content, context and form as revealed by the entire record.... To constitute a matter of public concern, speech must relate to a topic of political, social or other concern of the community. ... But speech which may be of general interest to the public is not automatically afforded first amendment protection.... In Koch v. City of Hutchinson, 847 F.2d 1436, 1440 n. 11 (10th Cir.) (en banc), cert. denied, 488 U.S. 909, 109 S.Ct. 262, 102 L.Ed.2d 250 (1988), we recently recognized that in analyzing such issues, “courts have particularly focused on the extent to which the content of the employee speech was calculated to disclose wrongdoing or inefficiency or other malfeasance on the part of government officials in the conduct of their official duties.” More recently, in Conaway v. Smith, 853 F.2d 789, 796 (10th Cir.1988), we emphasized that in analyzing whether speech constitutes a matter of public concern, the focus is on the motive of the speaker “i.e., whether the speech was calculated to disclose misconduct or dealt with only personal disputes and grievances with no relevance to the public interests.” (emphasis in original). See also Callaway v. Hafeman, 832 F.2d 414, 417 (7th Cir.1987) (courts must look at the point of the speech: Was the employee’s point to bring wrongdoing to light or to raise other issues of public concern because they are of public concern, or was the point to further some purely private interest?), (some citations omitted; emphasis added)
Attached to the joint stipulation of facts are seven cartoons (some of which are denominated as “Rat-a-Gram”). These cartoons have rats as cartoon characters, and these characters are identified by name, nickname or initials, and by rank, as various officers and members of the Baton Rouge Police Department. These cartoons (Rat-a-Grams) depict, among other things, the following: (1) three rats having sex with each other with another rat watching and with the title “Tips on How to move up in the Department”; (2) six rats sharing two showers being observed by a seventh rat under a title stating “Join the Golden Officers Club”, coupled with a list of requirements for membership which provided, among other things, that a member must “Be willing to Rat on Fellow Officers”; (3) a male rat having sex with a female rat with three other rats waiting in line accompanied by a caption stating “When You’re Down on Your Luck Everybody Wants a Piece of Your Ass”; (4) a rat standing next to a coffin holding a badge and saying “Sorry Lt. but we are short on badges”, with a second rat saying “Give me! Give me! Hurry!”; and (5) two male rats having sex and being watched by three other rats.
In the trial court, Normand asserted “his actions were constitutionally protected and that the City failed to maintain its burden of proof and accordingly, the decision of the Board as a matter of law, was not made for just cause, and therefore, must be reversed.” The trial court affirmed the Board with the following rationale:
*1127 Though not having before it the reasons of the Civil Service Board, the Court is of the opinion that the Board, from the stipulation of fact and the exhibits submitted, could have clearly found and must have found that the rules and regulations, specifically Articles 301 and 601 were violated by the conduct of the appellant. The Board proceeded to reverse the termination of appellant by the Chief of Police and instead ordered a suspension of ninety (90) days for the appellant.
The Court cannot say that this action was not supported by the evidence which was before the Civil Service Board, and therefore the appeal filed herein will be ordered dismissed.
The trial court found as a matter of fact and law that the rulings of the Board were correct. After a review of the record, we conclude that the trial court’s legal ruling was correct and its factual findings were not clearly wrong (manifestly erroneous). Bruno v. Department of Police, 462 So.2d 139 (La.1985); Lewis v. Sulphur Municipal Fire & Police Civil Service Board, 502 So.2d 1162 (La.App. 3rd Cir.), writ denied, 506 So.2d 113 (La.1987); City of Westwego v. McKee, 448 So.2d 166 (La.App. 5th Cir.1984). The expressions (speech) herein are not a matter of public concern; they do not relate to a topic of political, social or other concern of the community. They pertain to personal disputes and grievances and were not calculated to disclose misconduct. Under the facts of this case, the employee’s interest in making the statements (expressions) does not outweigh the Department’s interest, as an employer, in promoting the efficiency of the public services it performs through its employees.
These assignments of error are without merit.
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. Normand is cast for the cost of this appeal.
AFFIRMED.

. Articles 301 and 601 of the Rules and Regulations of the Baton Rouge Police Department provide as follows:
301. Personal Conduct and Behavior
Every member of the Baton Rouge Police Department, whether on or off duty in an official or unofficial capacity, must conduct himself and act or behave at all times in such a manner as to set a good example for all others with whom he may come in contact. He shall in no way bring dishonor or disgrace upon himself or exhibit himself as morally unworthy to continue as a member of the honorable profession of Police Officer.
601. Respect of Rank
All members of the Department shall treat all members of superior rank with the respect and response due such rank. They must, on all occasions, be civil, respectful, and considerate of their superiors and with all others with whom they come in contact. No member shall criticize, condemn, or gripe about any action, policy, or orders of any superior.