MICHAEL E. KIRBY, Judge.
Plaintiff, Raymond C. Burkart, Jr., a Major in the New Orleans Police Department (“NOPD”), appeals the Civil Service Commission’s (“the Commission”) denial of his appeal of a ten day suspension imposed upon him by NOPD Superintendent Edwin P. Compass, III (“Chief Compass”) for violations of department regulations relative to moral conduct, courtesy and professionalism.
This case involves a verbal altercation on July 27, 2001 between two high-ranking law enforcement officials, Major Burkart and Mr. Salvadore Perricone, an Assistant United States Attorney and Chief of the Organized Crime Task Force in New Orleans. This confrontation occurred in the hallway of NOPD headquarters where Mr. Perricone came to attend a meeting.
As noted by the Commission in its opinion, for several years prior to the incident in question, Major Burkart and Mr. Perri-cone had a very strained relationship arising out of conflicts in their law enforcement duties and private law practice. At the Commission hearing, Major Burkart testified that on the date of the verbal altercation, he passed Mr. Perricone in the hallway at NOPD headquarters and refused Mr. Perricone’s attempt to shake hands. Major Burkart then said to Mr. Perricone, “I’m not shaking your hand. You bum-rapped me.” According to Major Burkart, Mr. Perricone called him “a f_liar.” Major Burkart responded, “Why don’t you retire so I can bust your ass?” He said that Mr. Perricone then stepped forward and said, ‘Why don’t you do it now?” He testified that both men *1231 raised their voices and used profanity during this verbal exchange.
Mr. Perricone’s version of the events varies from that offered by Major Burkart. According to Mr. Perricone, Major Bur-kart told him he v$ould not shake his hand and called Mr. Perricone “a backstabbing s.o.b.” Mr. Perricone walked away and several minutes later, Major Burkart approached him in the hallway and said, “I can’t wait until you retire ‘cause I’m going to kick your f_ass.” Mr. Perricone, referring to a previous legal matter in which both men were involved then said, “We both know what happened back in 1995.” He claims that Major Burkart then told him, “I’m going to get you.” Mr. Perricone denies calling Major Burkart a liar.
F.B.I. Special Agent Todd Cox was also at NOPD headquarters for the same meeting as Mr. Perricone. He witnessed the verbal altercation between Major Burkart and Mr. Perricone, and he corroborated Mr. Perricone’s version of the events.
Chief Compass notified Major Burkart by letter that an investigation into the events of July 27, 2001 determined that Major Burkart was arrested on a federal warrant on a charge that he threatened to assault an Assistant United States Attorney with intent to retaliate on account of the performance of that officer’s official duties. Furthermore, the investigation determined that Major Burkart failed to conduct himself in a professional and courteous manner during the verbal exchange with Mr. Perricone by using obscenities and vulgarities. The letter noted that a hearing on this matter was held on July 17, 2002, and Major Burkart offered nothing at that hearing that would tend to mitigate, justify or explain his behavior. Chief Compass stated that he was imposing a ten (10) day suspension for violations of department regulations regarding courtesy and professionalism. These rules read as follows:
RULE 2 — MORAL CONDUCT
2. COURTESY
Employees shall be courteous, civil and respectful in their conduct toward all persons. The use of profane, vulgar or discourteous gestures or language to or in the presence of any citizen is prohibited.
The use of profane, vulgar or discourteous gestures or language either verbal or written by one employee to another employee is prohibited.
RULE 3 — PROFESSIONAL CONDUCT
1. PROFESSIONALISM
Employees shall conduct themselves in a professional manner with the utmost concern for the dignity of the individual with whom they are interacting. Employees shall not unnecessarily inconvenience or demean any individual or otherwise act in a manner which brings discredit to the employee of the Police Department.
Chief Compass also stated in the letter that Major Burkart’s conduct was contrary to the standards prescribed by Rule IX, Section 1, Paragraph 1.1, of the Rules of the Civil Service Commission for the City of New Orleans, which states in part:
When an employee in the classified service is unable or unwilling to perform the duties of his/her position is satisfactory manner, or has committed any act to the prejudice of the service, or has omitted to perform any act it was his/ her duty to perform, or otherwise has become subject to corrective action, the appointing authority shall take action warranted by the circumstances to maintain the standards of effective service.
*1232 Major Burkart appealed the disciplinary action of Chief Compass to the Commission. The Commission held a hearing in this matter, and rendered its decision denying Major Burkart’s appeal on August 11, 2008. Major Burkart now appeals to this Court from the decision of the Commission. On appeal, Major Burkart argues that the Appointing Authority, the NOPD, erred when it took disciplinary action against him, and that the disciplinary action taken by the Appointing Authority was excessive under the circumstances.
In its opinion, the Commission notes that the information in the record regarding the history of the strained relationship between Major Burkart and Mr. Perricone is helpful in understanding why these two men had a motive for the confrontation on July 27, 2001, but it is irrelevant in determining whether the Appointing Authority was justified in disciplining Major Burkart. The Commission stated that it is undisputed that on July 27, 2001, Major Burkart passed Mr. Perricone in the hallway of NOPD headquarters, refused to shake Mr. Perricone’s hand and several minutes later said to Mr. Perricone in a loud voice, “Why don’t you retire so I can bust your ass?” The Commission found that even though the testimony differed as to whether or not Mr. Perricone called Major ^Burkart a liar, under any of the versions presented, there is no doubt that Major Burkart threatened Mr. Perricone in a public forum.
The Commission went on to state that this type of conduct by a Major in the Police Department is unquestionably harmful to the public service, particularly the important cooperative relationship between city and federal law enforcement officials. The Commission found that Major Burkart’s conduct constituted a violation of standards of professionalism and courtesy for which discipline was appropriate.
In determining that the penalty of a ten-day suspension was justified, the Commission stated that it agreed with Chief Compass’ reasons for giving Major Burkart that particular penalty. The Commission cited the following portion of Chief Compass’ testimony:
CHIEF COMPASS:
When I talked to Maj. Burkart about the encounter, he basically stated that the encounter did take place and that he did use profanity, but he felt as though he was provoked. I looked at the totality of the circumstances and him being a major on the New Orleans Police Department. And you have to have a certain amount of restraint. And in my opinion, he could have withdrawn from the encounter and he did not have to use profanity. So, therefore, I found him guilty of professionalism and courtesy violations. I didn’t find any criminal violations sustained or anything like that as far as termination. But I found that he was discourteous and he did show a lack of professionalism, therefore I gave him five days for each count, which was a 10-day suspension.
MR. BOSSETTA:
Why did you decide to give Maj. Bur-kart a 10-day suspension?
CHIEF COMPASS:
Well, I looked at the rank and Maj. Burkart holds one of the top civil service ranks in the New Orleans Police Department. And there’s a certain level of professionalism that you have to carry yourself with at that level. And I saw that, from the circumstances, in talking with Maj. Burkart, in my opinion, he had an opportunity to withdraw from the encounter and he didn’t withdraw. *1233 Therefore, he showed poor judgment, so therefore I gave him the penalty of 10 days.
MR. BOSSETTA:
Chief Compass, your relationship, obviously, with the U.S. Attorney’s Office is important to the work that you do. Could you describe for the Commission how the incident with Maj. Burkart impacts the mission that you’re trying to accomplish for the Department?
CHIEF COMPASS:
Well, basically, you have to work with other agencies and we have to have a level of cooperation. And when encounters like this take place, it basically hurts that relationship and, basically, it’s something that never should have happened, in my opinion.
The applicable legal precepts in this case are as follows: An employee who has gained permanent status in the classified city civil service cannot be subjected to disciplinary action by his employer except for cause expressed in writing. The employee may appeal from such disciplinary action to the City Civil Service Commission. The burden of proof on appeal, as to the facts, shall be on the appointing authority. La. Const, art. X, § 8 (1974); Walters v. Department of Police of City of New Orleans, 454 So.2d 106, 112-113 (La.1984). The Commission’s decision is subject to review on any question of law or fact upon appeal to the appropriate court of appeal. La. Const. art. X § 12(B).
The Commission has a duty to independently decide, from the facts presented, whether the appointing authority had good or lawful cause for taking disciplinary action and, if so, whether the punishment imposed was commensurate with the dereliction. Walters, 454 So.2d at 113. Legal cause for disciplinary action exists whenever an employee’s conduct impairs the efficiency of the public service in which that employee is engaged. Cittadino v. Department of Police, 558 So.2d 1311 (La.App. 4 Cir.1990). The appointing authority has the burden of proving, by a preponderance of the evidence, that the complained of activity occurred, and that such activity bore a real and substantial relationship to the efficient operation of the public service. Id., at 1315.
In reviewing the Commission’s exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, this Court should not modify the Commission’s order unless it is arbitrary, capricious or characterized by an abuse of discretion. Walters, 454 So.2d at 114. “Arbitrary or capricious” means that there is no rational basis for the action taken by the Commission. Bannister v. Department of Streets, 95-0404, p. 8 (La.1/16/96), 666 So.2d 641, 647.
The Commission found that the Appointing Authority sustained its burden of proof, and we agree. The record is clear that the complained of activity occurred. Major Burkart, one of the highest ranking members of the NOPD, in a loud voice told an Assistant U.S. Attorney, “Why don’t you retire so I can bust your ass?” while that federal law enforcement official was at NOPD headquarters on official business. Major Burkart acknowledges that this encounter took place, but argues that he was provoked when Mr. Perricone allegedly called him “a f_:_liar.” We note that we are not called upon to review Mr. Per-ricone’s conduct in this confrontation. Mr. Perricone is not a City Civil Service employee, and the Appointing Authority does not have the authority to discipline him. The issues before us are whether Major Burkart’s conduct impaired the efficient *1234 operation of the police department and whether his punishment was commensurate with the infraction.
We conclude, as did the Appointing Authority, that a police officer of Major Burkart’s high rank should have exercised restraint and withdrawn from the encounter, and not made the remarks at issue to a federal law enforcement official who was at NOPD headquarters on official business. We find no merit in Major Burkart’s argument that his remarks are protected speech under the First Amendment. The First Amendment does not protect all speech by a public employee. Normand v. City of Baton Rouge, Police Department, 572 So.2d 1123, 1125 (La.App. 1 Cir.1990). Whether the speech of a public employee is constitutionally protected is determined by balancing the interest of the employee, as a citizen, in commenting upon matters of public concern against the interest of the government (national, state or local), as an employer, in promoting the efficiency of the public services it performs through its employees. Id., citing Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).
The remarks made by Major Burkart to Mr. Perricone were not a matter of public concern; they involved a personal dispute between these two men. As in the Normand case, the employee’s interest in making these remarks does not outweigh the Appointing Authority’s interest in promoting the efficiency of the public service it performs. In Stevens v. Department of Police, 2000-1682, p. 8 (La.App. 4 Cir. 5/9/01), 789 So.2d 622, 627, this Court stated as follows:
The public puts its trust in the police department as a guardian of its safety, and it is essential that the appointing authority be allowed to establish and enforce appropriate standards of conduct for its employees sworn to uphold that trust. Indeed, the Commission should give heightened regard to the appointing authorities that serve as special guardians of the public’s safety and operate as quasi-military institutions where strict discipline is imperative. (Citation omitted).
The record establishes that Major Bur-kart threatened Mr. Perricone in a public forum. Considering the totality of the circumstances, we agree with the Commission’s finding that the type of conduct exhibited by Major Burkart on July 27, 2001 is harmful to the public service, particularly the important cooperative relationship between city and federal law enforcement personnel.
Major Burkart went into exhaustive detail at the hearing and in his appeal brief in describing the history of his acrimonious relationship with Mr. Perricone. We agree with the Commission that this history is not relevant to the issue of whether the NOPD was justified in disciplining Major Burkart for the confrontation of July 27, 2001. The Commission was not arbitrary or capricious and did not abuse its discretion in finding that Major Burkart’s conduct constituted a violation of department standards of courtesy and professionalism for which discipline was appropriate.
As for the issue of whether the punishment was commensurate with the infraction, we note that Chief Compass testified that the ten-day suspension imposed upon Major Burkart included five days for being discourteous and five days for lack of professionalism. The Commission agreed with Chief Compass’ reasons for imposing this particular sentence. After review of the record, we conclude that the ten-day suspension was appropriate punishment for Major Burkart’s violations of the department’s standards of courtesy and pro *1235 fessionalism. The Commission’s denial of Major Burkart’s appeal of the ten-day suspension was neither arbitrary nor capricious and was not an abuse of discretion.
For the reasons stated above, the decision of the Commission is affirmed.
AFFIRMED.