JONATHAN BURNETTE     \*     NO. 2023-CA-0684

VERSUS     \*

    COURT OF APPEAL

NEW ORLEANS POLICE     \*
DEPARTMENT     FOURTH CIRCUIT

    \*

    STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
CITY CIVIL SERVICE COMMISSION ORLEANS
NO. 9324
,
\* \* \* \* \* \*
**Judge Nakisha Ervin-Knott**
\* \* \* \* \* \*

(Court composed of Chief Judge Terri F. Love, Judge Rosemary Ledet, Judge Nakisha Ervin-Knott)

***LEDET, J., CONCURS IN THE RESULT WITH REASONS***


Eric J. Hessler
ATTORNEY AT LAW
320 N. Carrollton Avenue #202
New Orleans, LA 70119


    COUNSEL FOR PLAINTIFF/APPELLANT

Andrew Gregorian
Assistant City Attorney
Williams R. H. Gorforth
Deputy City Attorney
Corwin St. Raymond
Chief Deputy City Attorney
Donesia D. Turner
City Attorney
PARISH OF ORLEANS
1300 Perdido Street, Room 5E03
New Orleans, LA 70112


    COUNSEL FOR DEFENDANT/APPELLEE

            **AFFIRMED**
            **March 6, 2024**

New Orleans Police Officer Jonathan Burnette ("NOPD") ("Officer Burnette") appeals the September 11, 2023 decision of the City Civil Service Commission (the "Commission") upholding his five-day suspension for violating the NOPD's internal policy regarding social media usage. For the following reasons, we affirm the Commission's decision.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

The following facts are not in dispute. On June 28, 2019, the NOPD received an anonymous complaint about a comment Officer Burnette had posted to Lieutenant Terry St. Germain's ("Lt. St. Germain") Facebook post. Lt. St. Germain had posted a photo on his personal Facebook account depicting a hotel meeting room full of police officers with a projector displaying a presentation at the front of the room. Lt. St. Germain described the picture with the caption "Fighting Crime in Major Cities" and tagged the Sheraton New Orleans Hotel ("Sheraton"), making the post visible on the Sheraton's public Facebook page. Officer Burnette commented on the post, "Ask them when they plan on implementing a crime fighting plan. Because I've been here for 20+ years and haven't seen a crime fighting plan yet. All I see is 'get stats' [sic]."

After receiving the anonymous complaint, the Public Integrity Bureau ("PIB") conducted an investigation to determine whether Officer Burnette's comment violated Chapter VI, Rule 3, Paragraph 13 of the NOPD's professional conduct rules. The rule prohibits employees from posting to the internet any material that "embarrasses, humiliates, discredits or harms the operations and reputation" of the NOPD. After Officer Burnette admitted he posted the statement, the PIB investigator found that his comment violated the NOPD's social media policy.

The NOPD held a Captain's Hearing on November 18, 2019. After the hearing, Captain Ryan Lubrano ("Captain Lubrano") agreed that Officer Burnette had violated NOPD internal policy and recommended that he receive a two-day suspension. However, Deputy Chief Paul Noel ("Chief Noel") recommended that Officer Burnette receive the presumptive five-day suspension instead. On November 3, 2021, Officer Burnette received an official suspension letter confirming his discipline and five-day suspension.

Officer Burnette appealed the NOPD's discipline to the Commission. Officer Burnette appeared before the Commission's appointed Hearing Examiner on January 6, 2022, and presented his appeal. The Hearing Examiner issued his findings on April 25, 2022, and recommended that Officer Burnette's appeal be denied. On September 11, 2023, the Commission issued its decision and denied Officer Burnette's appeal. Officer Burnette timely appealed the Commission's decision.

## ASSIGNMENTS OF ERROR

Officer Burnette asserts two assignments of error on appeal. He argues that the Commission erred in (1) finding that his private Facebook post was not

protected free speech under the First Amendment of the United States Constitution and (2) finding that the five-day suspension was not arbitrary and capricious.

## STANDARD OF REVIEW

"The [C]ommission's decision is subject to review on any questions of law or fact by the court of appeal." *Goins v. Dep't of Police*, 570 So. 2d 93, 94 (La. App. 4th Cir. 1990) (citing La. Const. art. X, § 12(B) and *Cittadino v. Dep't of Police*, 558 So. 2d 1311 (La. App. 4th Cir. 1990)). In reviewing a decision of the Commission, the appellate court must determine "(1) whether the appointing authority had good and lawful cause for taking the disciplinary action, and (2) whether the punishment the appointing authority imposed is commensurate with the offense." *Mykulak v. New Orleans Police Dep't*, 2022-0578, p. 6 (La. App. 4 Cir. 3/16/23), 359 So. 3d 1028, 1034 (quoting *Harris v. Dep't of Fire*¸ 2008-0514, p. 11 (La. App. 4 Cir. 7/16/08), 990 So. 2d 54, 62). Appellate courts review the Commission's findings of fact for manifest error and its overall decision for an abuse of discretion. *Walters v. Dep't of Police of the City of New Orleans*, 454 So. 2d 106, 114 (La. 1984). The Commission abuses its discretion if its decision is arbitrary and capricious; a decision is arbitrary and capricious if there is no rational basis in the record to support the decision. *Rivet v. Dep't of Police*, 2018-0229, p. 10 (La. App. 4 Cir. 10/24/18), 258 So. 3d 111, 120 (citing *Cure v. Dep't of Police*, 2007-0166, p. 2 (La. App. 4 Cir. 8/01/07), 964 So. 2d 1093, 1095).

## DISCUSSION

### *The role of the City Civil Service Commission*

Classified civil service employees, including NOPD police officers, may only be disciplined for cause expressed in writing. *Mykulak*, 2022-0578 at p. 6, 359 So. 3d at 1033-34 (citing La. Const. art. X, § 8(A) and *Walters*, 454 So. 2d at 112).

3

A classified civil service employee subject to disciplinary action may appeal the action to the Commission. La. Const. art. X, § 8(A). The appointing authority bears the burden of proving through a preponderance of evidence that (1) the violation occurred and (2) the violation "impaired the efficiency of the public service and that it bears a real and substantial relationship to the efficient operation of the public service." *Cittadino*, 558 So. 2d at 1315 (citing *Newkirk v. Sewerage and Water Bd.*, 485 So. 2d 626 (La. App. 4th Cir. 1986)).

### *The First Amendment and Public Employees*

Although freedom of speech is a fundamental right under the First Amendment of the United States Constitution, the right does not extend to all speech made by public employees. *Burkhart v. New Orleans Police Dep't*, 2003-1699, p. 8 (La. App. 4 Cir. 3/31/04), 871 So. 2d 1229, 1234 (citing *Normand v. City of Baton Rouge, Police Dep't*, 572 So. 2d 1123, 1125 (La. App. 1st Cir.1990)). Public employees do not have "an absolute, unfettered right to free speech." *Foreman v. LSU Health Scis. Ctr.*, 2004-0651, p. 7 (La. App. 1 Cir. 3/24/05), 907 So. 2d 103, 108 (citation omitted). Typically, when public employees speak on matters of public concern, their speech will fall within the protection of the First Amendment. *Id*. However, a public employee's speech may, at times, fall outside the protection of the First Amendment because the government, as an employer, has a legitimate right and interest in regulating the speech of its employees to a degree. *Kling v. La. Dep't of Revenue*, 2018-1480, p. 5 (La. App. 1 Cir. 7/18/19), 281 So. 3d 696, 703. The law imposes a balancing test in order to determine whether the speech made by a public employee is constitutionally protected. *Burkhart*, 2003-1699 at p. 8, 871 So. 2d at 1234. That is, a reviewing court must balance "the interest of the employee, as a citizen, in

4

commenting upon matters of public concern against the interest of the government (national, state or local), as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* (citing *Normand*, 572 So. 2d at 1125 and *Pickering v. Bd. of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)). When balancing these interests, the reviewing court should consider the context surrounding the employee's speech, including the time, manner, and place of the speech. *Rankin v. McPherson*, 483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987) (citations omitted).

### *Whether Officer Burnette's post was protected under the First Amendment*

The NOPD disciplined Officer Burnette for violating Chapter VI, Rule 3, Paragraph 13 of the NOPD's professional conduct rules. The rule states, "Employees shall not post any material on the internet . . . that violates any local, state, or federal law, and/or embarrasses, humiliates, discredits or harms the operations and reputation of the Police Department or any of its members."[1] The Commission found that Officer Burnette spoke on a matter of public concern as a private citizen. This would usually afford Officer Burnette First Amendment protection. However, in applying the balancing test, the Commission determined that the First Amendment did not protect Officer Burnette's speech because the NOPD's interest in protecting its reputation outweighed his free speech interests.

The Commission relied on the evidence and testimony submitted at the hearing in reaching its conclusion. This evidence included Chief Noel's testimony as well as a screenshot of Lt. St. Germain's post with Officer Burnette's comment.

---

[1] Officer Burnette does not allege that this policy violates the First Amendment. His argument before the Commission and on appeal is that his specific comment is protected because he was speaking on a matter of public concern.

The Commission noted that Chief Noel had testified that the contents of the comment could undermine public trust in the NOPD and threaten its ability to effectively maintain public safety and order. Chief Noel confirmed that the public's confidence is a central component to its efficient operation. Additionally, Officer Burnette posted the comment on his superior's Facebook post, so their coworkers could view the comment if Lt. St. Germain was also a Facebook friend. This could adversely impact the NOPD's ability to foster close working relationships and thus impact its ability to promote the efficiency of the public services it performs through its employees.

The Commission also noted that any Facebook user who accessed the Sheraton's Facebook page could see Officer Burnette's criticism of the NOPD. The public nature of the comment contributed to its ability to affect the public's confidence in the NOPD. At the hearing, the NOPD presented a screenshot of Lt. St. Germain's post with Officer Burnette's comment. The screenshot showed that at least one person had seen his comment because a heart emoji had been left on the comment.

Overall, Chief Noel testified that the post was made at a crucial time for the NOPD because the City of New Orleans was hosting a major conference and Superintendent Shaun Ferguson wanted to highlight the NOPD's leadership. Chief Noel also testified that New Orleans had been one of a few cities selected by the Department of Justice to host the crime fighting conference and that the Sheraton had donated its services for the NOPD to hold the conference. Although Officer Burnette alleged that the post was supposed to be humorous, Chief Noel testified that the comment was critical, harmful, and discredited the police department.

All of the evidence presented to the Commission suggests that Officer Burnette's comment undermined the NOPD and the public service its employees perform. Officer Burnette made a disparaging comment in a public forum and on his superior's post about NOPD leadership at a time when the NOPD and the City of New Orleans sought to highlight its new leadership. The time, manner, and place of this comment weighs in favor of the NOPD's interest as an employer and against Officer Burnette's private interest as a citizen. The evidence in the record supports the Commission's decision, and, as such, this Court finds that the Commission did not abuse its discretion in finding that First Amendment protection did not extend to Officer Burnette's comment.

***Whether the NOPD's five-day suspension was arbitrary and capricious***

Officer Burnette asserts that the five-day suspension is not commensurate with the infraction. At the hearing on this matter, the parties stipulated that a five-day suspension was the presumptive penalty for violating the NOPD's social media policy. After the Captain's Hearing, Captain Lubrano recommended a two-day suspension based on factors he found to be mitigating, such as the fact Officer Burnette said he meant for the post to be humorous, terminated his Facebook account, and promised not to make such a post again. However, Chief Noel testified that he recommended the presumptive five-day penalty be given after reviewing the circumstances surrounding the case, and the NOPD ultimately issued the five-day penalty.

The Commission found Chief Noel's testimony persuasive to support the imposition of the five-day presumptive penalty. Chief Noel testified to the Commission that Officer Burnette's public criticism of the NOPD's crime fighting strategy impaired the efficiency of the NOPD. The Commission noted that Chief

Noel emphasized the importance of the NOPD maintaining the community's trust so that it can effectively advance public safety and order. Chief Noel also testified that Officer Burnette had violated a clear rule of the police department at a crucial time for the organization.

The role of this Court is not to be a "*de facto* pardon board." *Byrd v. Dep't of Police*, 2012-1040, p. 10 (La. App. 4 Cir. 2/06/13), 109 So. 3d 973, 980. This Court may only intervene in cases where the punishment imposed is not commensurate with the offense committed. Considering that a five-day suspension is the presumptive penalty, we do not find that the Commission abused its discretion. The penalty was commensurate with the violation.

## DECREE

For the foregoing reasons, the Commission's ruling upholding Officer Burnette's five-day suspension is affirmed.

**AFFIRMED**