VICKI D. SIBLEY
v.
LSU HEALTH SCIENCES CENTER  EARL K. LONG MEDICAL CENTER.
No. 2007 CA 0895.
Court of Appeal of Louisiana, First Circuit.
February 8, 2008.
Not Designated for Publication
JILL L. CRAFT, Baton Rouge, La, Attorney for Plaintiff-Appellant, Vicki D. Sibley.
MARTHA K. MANSFIELD, Baton Rouge, La, Attorney for Defendant-Appellee, LSU Health Sciences Center.
ROBERT R. BOLAND, JR., Baton Rouge, La, Attorney for Anne S. Soileau, Director Department of State Civil Service
Before: CARTER, C.J., PETTIGREW, and WELCH, JJ.
PETTIGREW, J.
In this case, appellant, Vicki D. Sibley, appeals an adverse ruling of the State Civil Service Commission ("Commission") upholding the termination of her employment with Earl K. Long Hospital ("EKL"). Finding no error in the Commission's decision, we affirm.
According to the record, Ms. Sibley was born without a rectum. Although she has had several surgeries to afford her a fecal outlet, she has no muscle tissue in her rectal region and has suffered from a life-long battle with fecal incontinence. Ms. Sibley had been employed by EKL since October 1996. She originally worked as a ward clerk in the EKL Emergency Room. In 2002, Ms. Sibley completed nursing school and was hired as a nurse on the Medical Surgery Unit. At the time of her termination, Ms. Sibley was employed as a Registered Nurse 2 with permanent status.
Throughout Ms. Sibley's employment with EKL, her supervisors received numerous complaints associated with her fecal incontinence. Ms. Sibley was counseled by her supervisors on several different occasions in 1996, 2002, 2003, and 2004 regarding physical issues such as stained clothes, stained chairs, feces in chairs, and gaseous odors. Ms. Sibley always assured her supervisors she was taking precautions and making the necessary changes. Ms. Sibley also received a written reprimand in December 2002 regarding her fecal incontinence, which included references to foul odors and visible fecal stains on her clothing and chairs. Ms. Sibley was advised that it was mandatory to wear incontinence pads, to have a change of clothing at work at all times, and to excuse herself immediately to change her clothes in the event of an accident. In October 2004, Ms. Sibley's supervisor suggested that she try adult diapers, bring extra uniforms to work, sit in a specific chair during her shifts, and wipe this chair down with alcohol swabs. The supervisor also suggested that Ms. Sibley see a doctor to determine if there were other medical options to control her problems.
By letter dated June 17, 2005, Ms. Sibley was notified by the appointing authority that EKL was considering disciplinary action against her and that the proposed recommendation was termination of her employment. The reasons for the proposed disciplinary action were explained to Ms. Sibley in the letter, and she was advised that she may respond to the charges in writing. Ms. Sibley responded to the charges against her in a letter dated June 21, 2005. After considering Ms. Sibley's response, the appointing authority decided to proceed with her termination. By letter dated July 1, 2005, Ms. Sibley was notified that she was terminated from her position at EKL. The charges set forth in this notice were identical to the charges in the original June 17, 2005 notice.
Ms. Sibley filed a notice of appeal with the Commission. Following a public hearing where evidence and testimony were presented before a Commission Referee, a decision was rendered on January 31, 2007, as follows:
While I am [sympathetic] to Ms. Sibley's plight, appointing authorities are entitled to maintain discipline and decorum at the work place. Absent such discipline, decorum, or respect for basic rights, a work place can neither be a conducive place to perform, nor a viable environment in which to accomplish the goals of the agency. It can easily be seen that a breach of decorum will impair the efficiency of state service. See Appeals of William H. Smith, No. 9075 decided 5/18/92; Jimmie Malone, No. 3697 decided 12/2/83; and Norman Schlatre No. S-14622 decided 10/11/02. I find that EKL has proved cause, but this cause is not the fault of Ms. Sibley.
CSR 12.6(b) allows an employee to be non-disciplinary removed, without the adverse consequences of a termination, when the cause for dismissal is not the employee's fault. In this case, the cause was not Ms. Sibley's fault, but rather a problem brought on by Ms. Sibley's birth defect. Therefore, I conclude that Ms. Sibley's dismissal for disciplinary reasons was inappropriate and that her removal should have been under CSR 12.6(b). EKL is hereby ordered to substitute the July 1, 2005 letter of termination with a letter of removal under CSR 12.6(b) citing the same cause and effective date for the action. [Footnote omitted.]
An appeal to this court by Ms. Sibley followed.
It is well established that the Commission has the authority to "hear and decide" disciplinary cases, which includes the authority to modify (reduce) as well as to reverse or affirm a penalty. La. Const. art. X. § 12; Bernard v. Louisiana Health and Human Resources Administration, 336 So.2d 55, 58 (La. App. 1 Cir. 1976). However, the authority to reduce a penalty can only be exercised if there is insufficient cause for imposing the greater penalty. Durden v. Plaquemines Parish Government, XXXX-XXXX, pp. 4-5 (La. App. 4 Cir. 4/12/06), 930 So.2d 182, 185.
In civil service disciplinary matters, appellate courts are presented with a multifaceted review function. Bannister v. Department of Streets, 95-0404, p. 8 (La. 1/16/96), 666 So.2d 641, 647. When reviewing the Commission's findings of fact, the appellate court is required to apply the manifestly erroneous or clearly wrong standard of review. However, in evaluating the Commission's determination as to whether the disciplinary action taken by the appointing authority was based on legal cause and commensurate with the infraction, the reviewing court should not modify or reverse the Commission's order unless it is arbitrary, capricious, or characterized by an abuse of discretion. Foreman v. LSU Health Sciences Center, XXXX-XXXX, p. 3 (La. App. 1 Cir. 3/24/05), 907 So.2d 103, 106, writ denied, XXXX-XXXX (La. 6/24/05), 904 So.2d 742. The present record, measured by these standards, discloses no error by the Commission Referee.
The Commission Referee found that although EKL had proven cause for Ms. Sibley's dismissal, the cause was not the fault of Ms. Sibley. Thus, pursuant to La. Const. art. X. § 12, the Commission Referee opted to modify Ms. Sibley's penalty from termination for cause to that of a non-disciplinary removal as set forth in Civil Service Rule 12.6(b).[1] Based on our independent review of the record before us, we find that a reasonable basis exists for the Commission Referee's comprehensive factual findings and conclusions of law.[2] Accordingly, Ms. Sibley's arguments on appeal are without merit.
For the above and foregoing reasons, we affirm the decision of the State Civil Service Commission and assess all costs associated with this appeal against appellant, Vicki D. Sibley. We issue this memorandum opinion in accordance with Uniform RulesCourts of Appeal, Rule 2-16.1B.
AFFIRMED.
 EXHIBIT A
 Decision
 Filed: January 31, 2007
 State of Louisiana
 Civil Service Commission
 Docket No. S-15748
 Vicki D. Sibley
 Versus
 LSUHSC-Earl K. Long Medical Center
 ____________________________________________________________________________
 Rule: 12.2
 Topic(s): Dismissal for creating an unpleasant work environment
 ____________________________________________________________________________
 Appearances: Jill L. Craft, representing Ms. Sibley
 Martha K. Mansfield, representing EKL

Statement of the Appeal
Vicki Sibley was employed by the LSUHSC-Earl K. Long Medical Center (EKL) as a Registered Nurse 2, with permanent status. A letter dated July 1, 2005, notified Ms. Sibley that she was terminated from her position effective July 5, 2005, for creating an unpleasant physical work environment for her co-workers due to her physical condition, fecal incontinence. On July 28, 2005, Ms. Sibley filed an appeal in which she claims that she was terminated based on her disability, fecal incontinence, which is a birth defect. Ms. Sibley also alleges that EKL did not give her a hearing on the proposed disciplinary action. As relief, Ms. Sibley seeks back wages and reinstatement.
I held a public hearing on June 12, 2006, and June 16, 2006, in Baton Rouge, Louisiana. Based upon the evidence presented and pursuant to the provisions of Article X, Section 12(A) of the Louisiana Constitution of 1974, as amended, I make the following findings.

Preliminary Matters
On August 9, 2005, EKL filed a motion for summary disposition alleging that the Commission has no jurisdiction over claims of discrimination due to disability. EKL also alleges that no pre-disciplinary hearing was requested by Ms. Sibley and she was given an opportunity to respond and did so. On August 16, 2005, Ms Sibley was given until September 1, 2005 to file a response.
On September 1, 2005, Ms. Sibley filed a response. In her response, Ms. Sibley claims that she is appealing her termination, which was discriminatory based on her disability and while the Commission has no jurisdiction over the American's with Disabilities Act (ADA) the Commission does have jurisdiction over her termination. Ms. Sibley also contends that she was denied due process during the pre-disciplinary procedure, and that the charges set forth are sketchy and without detail and do not meet the specificity requirements of the Civil Service Rules.
On November 30, 2005, I issued a ruling in which I determined that summary disposition was not appropriate. In this ruling I noted that, while the Commission does not have jurisdiction over the ADA, we do have jurisdiction over claims of discrimination arising in the context of a removal or dismissal. See: Department of Agriculture and Forestry v. Sumrall, 728 So.2d 1254 (La. 1999).

Findings of Fact
1. Vicki D. Sibley was employed by LSUHSC-EKL as a Registered Nurse 2, with permanent status.
2. Ms. Sibley was originally employed at EKL in October 1996, as a Clerk 3 in the Emergency Room. Her supervisor was James Altazan. Mr. Altazan counseled Ms. Sibley several times regarding physical issues, including stained clothes, stained chairs, feces in chairs and bodily odors. Mr. Altazan never had any problems with Ms. Sibley's work product.
3. When Ms. Sibley finished nursing school, around January of 2002, she was hired as a nurse on the Medical Surgery Unit, referred to as 2 South. Ms. Sibley's supervisor was Linda Arnold. Ms. Arnold had numerous complaints from doctors and fellow nurses about Ms. Sibley's gaseous odors, soiled clothing, and soiled chairs. Ms. Arnold met with Ms. Sibley in an attempt to find a solution to these problems. Ms. Sibley assured her that she was taking the necessary precautions. When the problems persisted Ms. Arnold forwarded the complaints to Peggy Pippenger, Assistant Administrator.
4. By letter dated December 6, 2002, Ms. Sibley received a written reprimand regarding her fetal incontinence, which included references to foul odors and visible fecal stains on her clothing and chairs. Ms. Sibley was advised that it was mandatory to wear incontinence pads, to have a change of clothing at work at all times, and to excuse herself immediately to change her clothes in the event of an accident.
5. Also in an attempt to control the problem, EKL replaced the cloth chairs on the surgical unit with vinyl chairs that could be wiped down and sanitized.
6. In mid 2003, Ester Coerver, Nurse Manager 2, became Ms. Sibley's supervisor. Ms. Coerver received numerous complaints regarding Ms. Sibley from nurses complaining about infection control issues. Ms. Coerver also received numerous complaints from doctors and co-workers complaining about the odor and the stains on Ms. Sibley's clothes and the chairs. Ms. Coerver spoke with Ms. Sibley regarding these issues on numerous occasions. Ms. Sibley always assured Ms. Coerver she was taking precautions and was making the necessary changes.
7. In October of 2004, Ms. Coerver verbally counseled Ms. Sibley. Ms. Coerver suggested that Ms. Sibley try adult diapers or depends, bring extra uniforms, sit in a specific chair each shift and wipe this chair down with alcohol swabs. She also suggested that Ms. Sibley see a doctor to determine if there were other medical options to control her problems.
8. Ms. Sibley had seen a doctor who told her the only solution to her problem was a colostomy. In November of 2004, Ms. Sibley saw Dr. David A. Margolin for a second opinion. Dr. Margolin suggested medical management, which included anti-diarrhea medications to increase sphincter function as well as dietary management and anti gas medication. He also discussed surgical options other than a colostomy.
9. In May of 2005, Ms. Sibley worked the 7:00 p.m. - 7:00 a.m. shift, and was designated the night shift charge nurse. The charge nurse assigns beds, makes staff assignments, etc. and is generally the more experienced nurse on the shift.
10. On the evening of May 12, 2065, Ms. Sibley was having additional incontinence problems due to a stomach virus. She was the only RN scheduled to work between 7:00 p.m. - 11:00 p.m.
11. Around 2:45 a.m. or 3:00 a.m. on May 13, 2005, Marlin Taylor, LPN, sat down behind Ms. Sibley in a chair. When he went out for his break, Debra Wright told him he had something on his pants. He went to the restroom, determined that he had fecal matter on his pants and tried to clean it off. He also noticed that Ms. Sibley had feces on her clothes. Mr. Taylor was very upset by this incident.
12. Tashunta Durand, LPN, was working the 11:00 p.m. - 7:00 a.m. shift on 2 South on the evening of May 12-13, 2005. Ms. Durand saw Ms. Sibley sit in a chair, jump up and move to another chair. She later saw the stain on Mr. Taylor's clothes and a soiled spot on Ms. Sibley's pants.
13. As she was arriving at work on May 13, 2005, Cindy Hergruder, RN, who worked the day shift, was told by Mr. Taylor to watch where she sat. Ms. Hergruder observed a golf ball size spot on the back of Ms. Sibley's pants that looked like yellow stool and was shown the spot on Mr. Taylor's pants.
14. When Ms. Coerver reported to work on the morning of May 13, 2005, she found the staff very upset. She received written complaints about Ms. Sibley from Lillie Bell, RN, LeAnn Turner, RN Charge, Hilda Angelo, LPN, Cindy Hergruder, RN, Gloria East, LPN, and Roslyn McGhee, RN Clinical Coordinator. Ms. Coerver forwarded this information to A. J. Vanier, Director of Nursing and Human Resources.
15. The ICU bathroom, which was the closest bathroom to 2 South was often found with fecal matter splattered all over the toilet and floor. The staff attributed this to Ms. Sibley, even though no one ever saw her leave the bathroom in this condition.
16. The staff on 2 South generally labeled chairs and the on coming shift wiped down chairs, phones, countertops, etc.
17. Ms. Sibley was born with an incomplete rectum, which causes her to have fecal incontinence that makes her unable to control her bowel movements or gas.
18. Ms. Sibley kept a change of clothes in her locker; she wore pads or adult diapers, attempted to follow the Doctor's advice and wiped down the chair she sat in at the end of each shift.
19. EKL follows universal precautions regarding bodily fluids and as a hospital has an infection control policy. EKL staff is expected to present themselves in a professional manner and to have good personal hygiene.
20. By letter dated June 17, 2005, Ms. Sibley was notified that EKL was considering disciplinary action, that the proposed recommendation was termination, and the charges against her. Ms. Sibley was given the opportunity to respond to the charges in writing.
21. By letter dated June 21, 2005, Ms. Sibley responded to the charges against her. The appointing authority considered Ms. Sibley's response and decided to go forward with her termination.
22. By letter dated July 1, 2005, Ms. Sibley was notified that she was terminated from her position at EKL. The charges set forth in this notice are identical to the charges in the pre-disciplinary notice.

Conclusions of Law
The right of a classified state employee to appeal disciplinary actions is provided for in Article X, Section 8(A) of the Louisiana Constitution. That section provides that "[t]he burden of proof on appeal, as to the facts, shall be on the appointing authority." The appointing authority must prove its case by a preponderance of the evidence. A preponderance of evidence means evidence that is of greater weight or more convincing than that which is offered in opposition thereto. Proof is sufficient to constitute a preponderance when, taken as a whole, it shows the fact or causation sought to be proved as more probable than not." Wopara v. State Employees' Group Benefits Program, 2002-2641, (La. App. 1 Cir. 7/2/03), 859 So.2d 67.
EKL has proven that Ms. Sibley had a medical condition that caused her to have fecal incontinence. EKL, proved that this was an ongoing problem that both the hospital and Ms. Sibley had been attempting to work out for years. Ms. Sibley's co-workers were aware of her problem, had observed stained uniforms, stains on the chairs, and smelt odors. They had complained intermittently about these things over the years and basically learned to deal with the problem.
Over the years, Ms. Sibley had tried to do things to minimize her problems. Even though there was some question as to whether Ms. Sibley consistently wore pads or adult diapers, she did keep a change of clothes in her locker, claimed a certain chair for her shift and wiped this chair down at the end of her shift. Ms. Sibley had also gone to see the doctor suggested by Ms. Coerver and was attempting to follow his advice regarding dietary management, anti-diarrhea and anti-gas medication. Ms. Sibley testified that the May 2005 incident was the first major problem that she had had since October of 2004. Ms. Sibley attributed this to the fact that she was having a problem on the evening of May 12, 2005, due to a stomach virus. Unfortunately, this problem manifested itself in such a manner that caused her co-worker to sit in a chair with fecal matter on it. To say that Mr. Taylor was upset is an understatement.
While I am sympatric to Ms. Sibley's plight, appointing authorities are entitled to maintain discipline and decorum at the work place. Absent such discipline, decorum, or respect for basic rights, a work place can neither be a conducive place to perform, nor a viable environment in which to accomplish the goals of the agency. It can easily be seen that a breach of decorum will impair the efficiency of state service. See Appeals of William H. Smith, No. 9075 decided 5/18/92; Jimmie Malone, No. 3697 decided 12/2/83; and Norman Schlatre No. S-14622 decided 10/11/02. I find that EKL has proved cause, but this cause is not the fault of Ms. Sibley.
CSR 12.6(b) allows an employee to be non-disciplinary removed, without the adverse consequences of a termination, when the cause for dismissal is not the employee's fault. In this case, the cause was not Ms. Sibley's fault, but rather a problem brought on by Ms. Sibley's birth defect. Therefore, I conclude that Ms. Sibley's dismissal for disciplinary reasons was inappropriate and that her removal should have been under CSR 12.6(b). EKL is hereby ordered to substitute the July 1, 2005 letter of termination with a letter of removal under CSR 12.6(b) citing the same cause and effective date for the action.[1]
As to the witness fees, A. J. Varner, who is no longer employed by the state, was subpoenaed to testify. Ms. Varner appeared at the hearing on June 12, 2006. Therefore, I order EKL to pay the witness fee in the amount of $9.60 to A. J. Varner, 3401 Lava Beds, Baton Rouge, LA 70814.
 __________________________
 Roxie F. Goynes
 Civil Service Commission Referee
NOTES
[1] Civil Service Rule 12.6(b) provides that an employee may be non-disciplinarily removed if "the cause for a dismissal is not the employee's fault" and further mandates that the appointing authority "designate the dismissal as a non-disciplinary removal" under Rule 12.6(b).
[2] We attach a copy of the Commission Referee's January 31, 2007 "Decision" to this opinion as "EXHIBIT A," adopting it as our own.
[1] This case is distinguishable from Gregory Johnson v. Orleans Levee District, CSC No. 6911 (8/11/88), where the referee determined' that the agency had not proved the charges against Mr. Johnson, but that they had proved cause for a removal under CSR 12.10 (which became CSR 12.6 on August 8, 1992) for exhaustion of sick leave. The Commission overturned the Referee, citing CSR 12.3 which grants a classified employee the right to detailed reasons of the charges and an opportunity to respond. In Ms. Sibley's case the cause for the removal under CSR 12.6(b) is exactly the same as the cause for termination under 12.2. Ms. Sibley was given pre-disciplinary notice of the charges and an opportunity to respond, which she did.