978 So.2d 384 (2007)
Michael F. STARR
v.
Kenny BOUDREAUX and Guidry Group, Inc.
No. 2007 CA 0652.
Court of Appeal of Louisiana, First Circuit.
December 21, 2007.
Rehearing Denied February 26, 2008.
*387 W. Christopher Beary, R. Ray Orrill, Jr., Aaron Z. Ahlquist, New Orleans, LA, for Plaintiff/Appellant, Michael F. Starr.
Jerry L. Hermann, Houma, LA for Defendant/Appellee, Kenny Boudreaux and Guidry Group, Inc.
Before WHIPPLE, GUIDRY, and HUGHES, JJ.
GUIDRY, J.
In this defamation action, plaintiff, Michael F. Starr, appeals from a judgment of the trial court granting a special motion to strike filed by the defendants, Kenny Boudreaux and Guidry Group, Inc. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
Michael Starr is an owner of Delta Starr Broadcasting, L.L.C. (Delta Starr). Delta Starr owns ninety-eight percent of La-Terr Broadcasting Corporation (La-Terr), which operates the KTIB 640 AM radio station (KTIB) in Thibodaux, Louisiana. On May 25, 2005, and June 1, 2005, the local weekly newspaper, the Tri-Parish Times, is owned by Guidry Group, Inc.
As a result of the publication of these articles, Starr filed a petition for damages based on defamation, slander, and libel wherein he claimed that the articles made five unqualified, affirmative statements of fact that were untrue. Thereafter, the defendants filed a special motion to strike Starr's petition pursuant to La. C.C.P. art. 971. In its motion, the defendants asserted that Starr is a public figure by virtue of his ownership interest in La-Terr and Delta Starr entities, which control KTIB. Further, the defendants asserted that the articles concerning the radio station involved a public issue/matter of public interest, were based on a thorough investigation, were *388 reported evenhandedly and without malice, and that the defendants believed that the articles were true when they were printed. Finally, the defendants asserted that based on the pleadings, affidavits, and attached exhibits, Starr did not have a probability of success on his claim, and therefore, his petition should be dismissed with prejudice and defendants should be awarded costs and attorney fees.
Following a hearing on the defendants' motion to strike, the trial court signed a judgment on March 13, 2006, in favor of the defendants, granting their motion to strike, dismissing Starr's petition for damages, and awarding $1,000.00 in attorney fees. Starr now appeals from this judgment, asserting that the trial court erred in finding that Starr failed to establish a prima facie case for defamation, slander, and libel, and accordingly, erred in granting the defendants' special motion to strike and in awarding attorney fees.

DISCUSSION
Special Motion To Strike
The special motion to strike is governed by La. C.C.P. art. 971, which provides, in part:
A. (1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.
(2) In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.
(3) If the court determines that the plaintiff has established a probability of success on the claim, that determination shall be admissible in evidence at any later stage of the proceeding.
B. In any action subject to Paragraph A of this Article, a prevailing party on a special motion to strike shall be awarded reasonable attorney fees and costs.
The granting of a special motion to strike presents a question of law. Appellate review of a question of law is simply a review of whether the trial court was legally correct or legally incorrect. Lamz v. Wells, 05-1497, p. 3 (La.App. 1st Cir.6/9/06), 938 So.2d 792, 795. On legal issues, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and renders a judgment on the record. Lamz, 05-1497 at p. 3, 938 So.2d at 795.
Article 971 was enacted by the legislature as a procedural device to be used in the early stages of litigation to screen out meritless claims brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances. Thinkstream, Inc. v. Rubin, 06-1595, p. 9 (La.App. 1st Cir.9/26/07), 971 So.2d 1092, 1100.
Pursuant to article 971, a cause of action against a person arising from any act in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim. La. C.C.P. art. 971(A)(1). Accordingly, article 971 establishes a burden-shifting mechanism, whereby once the mover has established that a cause of action against him arises from an act by him in furtherance *389 of the exercise of his right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue, the burden then shifts to the plaintiff to demonstrate a probability of success on his claim. See Thinkstream, 06-1595 at p. 9, 971 So.2d at 1100.
In the present case, neither party disputes that the cause of action against the defendants arose from an act by the defendants in furtherance of the right of petition or free speech, as the defendants made the allegedly defamatory statements in several articles published in the Tri-Parish Times newspaper, wherein the paper attempted to provide the public with information regarding the sudden removal from the airwaves of an important local radio station. Clearly, this involves an act in furtherance of the defendants' right to free speech under the United States and Louisiana Constitutions in connection with a public issue. Accordingly, because the defendants met their initial burden of proof, the burden shifted to Starr to establish the probability of success on his claim against the defendants.
Defamation
A cause of action for defamation arises out of La, C.C. art. 2315. Defamation involves the invasion of a person's interest in his or her reputation and good name. Costello v. Hardy, 03-1146, p. 12 (La.1/21/04), 864 So.2d 129, 139. To maintain a cause of action for defamation, a plaintiff must prove: (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury. Lamz, 05-1497 at p. 7, 938 So.2d at 797. If any one of these required elements is lacking, plaintiff's cause of action fails. Costello, 03-1146 at p. 12, 864 So.2d at 140.
Defamatory words are, by definition, words which tend to harm the reputation of another so as to lower the person in the estimation of the community, to deter others from associating or dealing with the person, or otherwise expose the person to contempt or ridicule. Fitzgerald v. Tucker, 98-2313, p. 11 (La.6/29/99), 737 So.2d 706, 716. Words that convey an element of personal disgrace, dishonesty, or disrepute are defamatory. Fitzgerald, 98-2313 at p. 11, 737 So.2d at 716. The question of whether a communication is capable of a particular meaning and whether that meaning is defamatory is ultimately a legal question for the court. The question is answered by determining whether a listener could have reasonably understood the communication, taken in context, to have been intended in a defamatory sense. Costello, 03-1146 at p. 13, 864 So.2d at 140.
In Louisiana, defamatory words have traditionally been classified into two categories: those that are defamatory per se and those that are susceptible of a defamatory meaning. Kennedy v. Sheriff of East Baton Rouge, 05-1418, p. 5 (La.7/10/06), 935 So.2d 669, 674-675. Words which expressly or implicitly accuse another of criminal conduct, or which, by their very nature tend to injure one's personal or professional reputation, even without considering extrinsic facts or surrounding circumstances, are considered defamatory per se. Kennedy, 05-1418 at p. 5, 935 So.2d at 675. When a plaintiff proves publication of words that are defamatory per se, the elements of falsity and malice are presumed, but may be rebutted by the defendant. Kennedy, 05-1418 at p. 5, 935 So.2d at 675. Injury may also be presumed. Kennedy, 05-1418 at p. 5, 935 So.2d at 675.
When the words at issue are not defamatory per se, a plaintiff must prove, in addition to defamatory meaning and publication, the elements of falsity, malice, and injury. Costello, 03-1146 at p. *390 14, 864 So.2d at 140. In cases involving statements made about a public figure, where constitutional limitations are implicated, a plaintiff must prove actual malice, i.e., that the defendant either knew the statement was false or acted with reckless disregard for the truth. Costello, 03-1146 at p. 14, 864 So.2d at 140-141.
To establish a reckless disregard for the truth, the plaintiff must show that the false publication was made with a high degree of awareness of probable falsity, or that the defendant entertained serious doubt as to the truth of his publication. Tarpley v. Colfax Chronicle, 94-2919, p. 2 (La.2/17/95), 650 So.2d 738, 740. Further, conduct which would constitute reckless disregard is typically found where a story is fabricated by the defendant, is the product of his imagination, or is so inherently improbable that only a reckless man would have put it in circulation. Kennedy, 05-1418 at pp. 28-30, 935 So.2d at 688-689.
In the instant case, Starr asserts that five statements printed in the newspaper articles are defamatory. These five statements assert: (1) Michael Starr, Vincent Bruno, and John Treen were equal owners of Delta Starr; (2) final judgment in a suit against Starr is pending; (3) Cajun Radio executives discovered unethical dealings of ownership with KTIB; (4) KTIB employees complained about receiving bounced checks from Starr; and (5) Bruno makes additional claims against Starr, which are serious under federal law, and each count could result in heavy fines or up to five years in jail if the court agrees.
Particularly, Starr contends that these five statements are defamatory per se, and therefore, he does not need to establish falsity, malice or injury, as those elements are presumed. However, the Louisiana Supreme Court has recognized that the legacy of United States Supreme Court decisions regarding defamation is that "the protections afforded by the First Amendment supercede the common law presumptions of [malice], falsity, and damages with respect to speech involving matters of public concern, at least insofar as media defendants are concerned." Kennedy, 05-1418 at p. 8, 935 So.2d at 677 (referring to Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), and Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986). Accordingly, our supreme court has recognized that in actions against a media defendant involving an issue of public concern, the presumptions of falsity, malice, and injury do not apply. Kennedy, 05-1418 at pp. 8-9, 935 So.2d at 677.
Additionally, prior to Kennedy, the supreme court indicated that in cases involving statements made about a public figure, where constitutional limitations are implicated, a plaintiff must prove actual malice, implying that defamation per se does not apply in cases involving a public figure. See Costello, 03-1146 at p. 14, 864 So.2d at 140-141 (wherein the court noted that if words are not defamatory per se, a plaintiff must prove malice, and in cases involving statements made about a public figure, a plaintiff must prove actual malice). Therefore, in accordance with the above decisions, in cases involving statements made on an issue of public concern against a media defendant or statements made about a public figure, a plaintiff must prove all elements of his cause of action for defamation, including actual malice, and may not rely on any presumption based on the fact that the words are defamatory per se.
Starr, however, contends that he is not a public figure, and therefore, any *391 heightened standard of proof is inapplicable. From our review of the facts and the record in the instant case, we find that Starr is a public figure for purposes of the limited issues involved in the newspaper articles.
The United States Supreme Court stated in Gertz v. Robert Welch, Inc., 418 U.S. 323, 351-352, 94 S.Ct. 2997, 3012-3013, 41 L.Ed.2d 789 (1974) that a person's designation as a public figure may rest on either of two alternative bases. In some instances, an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. Gertz, 418 U.S. at 351, 94 S. Ct at 3013. More commonly, however, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. Gertz, 418 U.S. at 345, 94 S.Ct. at 3009. An individual who voluntarily injects himself or is drawn into a particular controversy becomes a public figure for this limited range of issues. In either case, such persons invite attention and comment and assume special prominence in the resolution of public questions. Gertz, 418 U.S. at 345 and 351, 94 S.Ct. at 3009 and 3013.
In the instant case, Starr is an owner of Delta Starr and La-Terr, which operates KTIB, a radio station that served as an important source to the community for local news, talk and weather. In his capacity as an owner and operator of KTIB, Starr issued a press release explaining KTIB's sudden removal from the airwaves. In this release, Starr stated that there had been some recent changes and that the station had experienced some setbacks. Starr stated that KTIB was seeking a new owner and he also expressed confidence that KTIB would resume broadcasting. In issuing this press release, Starr voluntarily injected himself into the debate regarding KTIB's removal from the airwaves and voluntarily divulged information regarding the company's operational problems and its search for a new owner. Therefore, to the extent that the newspaper articles at issue discussed Starr in his capacity as an owner and operator of KTIB, and addressed issues directly related to the ownership and management of KTIB, we find that Starr was a public figure for that limited issue.
Further, even if we did not find that Starr was a public figure, the articles and statements at issue involve a matter of public concern. The United States Supreme Court has defined matters of "public concern" as speech "relating to any matter of political, social, or other concern to the community." Connick v. Myers, 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). Clearly, the articles discussing the removal of a local radio station from the airwaves, which was an important source for local news, talk, and weather, relates to a matter of public concern and is an issue about which the local community would reasonably be expected to have a legitimate interest. Therefore, because we find that Starr is a public figure for the limited issues involved, and alternatively, that the articles at issue, published by the media defendants, involve a matter of public concern, Starr must prove actual malice, as well as the other elements of his defamation claim, in order to prevail.
From our review of the record, we find no evidence to suggest that the defendants acted with actual malice in publishing the newspaper articles at issue. Defendants filed into the record affidavits of Darrin Guidry, the President and Chief Executive Officer of Guidry Group, and Kenny Boudreaux. In these affidavits, Guidry and Boudreaux state that the articles were researched and written in accordance *392 with proper reporting standards, including review of the public records and interviews with known, reliable, and identified sources. Additionally, the defendants attached copies of the documents they reviewed in writing the articles, including copies of complaints filed in the Seventeenth Judicial District Court and federal court; emails from Starr's employees; letters from Vincent Bruno to the Federal Communications Commission; and affidavits from Vincent Bruno, John Treen, and Thomas Cvitanovich (a shareholder of La-Terr).
In opposing the motion to strike, Starr filed his affidavit; acts of sale related to ownership interests in Delta Starr and La-Terr; a judgment from the Seventeenth Judicial District Court dismissing a claim filed against Starr on an exception of venue; affidavits from two of Starr's employees clarifying previous statements regarding their paychecks; and an email from the President of Wilkins Communications stating that he did not know where the defendants obtained information that it or Cajun Radio was excusing itself from the deal with KTIB, that he did not comment orally or in writing to anyone with the defendants, and that the comments contained in the newspaper articles were not made by any of his representatives or counsel.
However, none of the evidence presented by Starr demonstrates any actual malice on the part of the defendants in publishing the newspaper articles at issue. The evidence neither suggests that the defendants knew the statements were false, nor that they acted with reckless disregard for the truth. The evidence presented by Starr may establish that the statements were subsequently shown to be false. However, it does not demonstrate that the defendants were highly aware at the time the statements were made that they were false or that they entertained serious doubt at that time as to the statements' truth. In fact, the totality of the evidence shows that at the time the articles were published, the defendants had a reasonable basis for believing the statements were true. See Trentecosta v. Beck, 96-2388, p. 16 (La.10/21/97), 703 So.2d 552, 562.
Accordingly, because Starr has failed to prove actual malice with regard to the statements made by the defendants in the newspaper articles, he did not establish a probability of success on his claim for defamation, and the trial court was correct in granting defendants' special motion to strike Starr's petition.
Attorney Fees
Louisiana Code of Civil Procedure article 971(B) provides that a prevailing party on a motion to strike shall be awarded reasonable attorney fees. Accordingly, because we find that the trial court was correct in granting defendants' motion to strike, we also find no error in the trial court's decision to award the defendants reasonable attorney fees.
In brief before this court, the defendants request additional attorney fees for work performed on appeal. However, it is well settled that an appellee, who neither appeals nor answers an appeal, is not entitled to additional attorney fees for legal services rendered on appeal. La. C.C.P. art. 2133; Parfait v. Gulf Island Fabrication, Inc., 97-2104, p. 18 (La.App. 1st Cir.1/6/99), 733 So.2d 11, 25. Because the defendants did not appeal the trial court's judgment, nor did they answer Starr's appeal and request additional attorney fees, they are not entitled to additional attorney fees for work performed on appeal.

*393 CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court, granting defendants' special motion to strike and dismissing Starr's petition. All costs of this appeal are to be borne by the appellant, Michael F. Starr.
AFFIRMED.
HUGHES, J., concurs.