CRAIN, J.
This is an appeal of a judgment granting a special motion to strike, filed pursuant to Louisiana Code of Civil Procedure article 971, and dismissing the plaintiff's defamation claims against certain defendants. We affirm.
FACTS AND PROCEDURAL HISTORY
On March 1, 2015, Kacie Magee Breen shot and killed her husband, Wayne Breen, a St. Tammany Parish physician. She maintains she was defending herself from an attack and reasonably believed she was in imminent danger of death or great bodily harm. Following the shooting, local media attention focused on Dr. Breen's death, the St. Tammany Parish coroner's classification of the death as a homicide, the criminal investigation that resulted in Breen not being arrested, charged, indicted, or prosecuted for her husband's death, and Breen's actions related to Dr. Breen's estate.
*635 In January 2016, Breen filed suit alleging the defendants defamed her in internet posts commenting about events before, at the time of, and after Dr. Breen's death. She claimed all the statements about her, including those calling her a murderer, were false and caused her shame, humiliation, discomfort, loss of reputation, public ridicule, loss of income, and mental anguish.
Three of the defendants, Dianne Arndt, Desiree Waguespack Maestri, and Amanda Terrell, filed a special motion to strike Breen's claims. They asserted the statements attributed to them were expressions of opinion made without knowing or reckless falsity about a matter of public concern and, therefore, are protected by the free speech guarantees of both the United States and Louisiana constitutions. The defendants claimed their statements were made while discussing and sharing views on closed internet sites dedicated to discussing Dr. Breen's death, and following news reports that Breen would not be arrested for killing him. They argued Breen's suit is meritless and was brought to chill their exercise of free speech. Breen opposed the special motion to strike, arguing the motion is inapplicable to this suit because the defendants' statements were not made about an issue of public interest, and she was not and is not a public figure.
The trial court granted the special motion to strike in favor of Arndt and Maestri and denied it as to Terrell. Breen appeals the judgment dismissing her claims against Arndt and Maestri.[1]
ANSWER TO APPEAL
Terrell filed an "answering brief on appeal," seeking review of the denial of her special motion to strike and asking this court to modify, revise, or reverse the judgment to conform it with the ruling in favor of Arndt and Maestri. An appellee desiring to have a judgment modified, revised, or reversed must answer the appeal and state the relief demanded not later than fifteen days after the return day or the lodging of the record, whichever is later. La. Code Civ. Pro. art. 2133. Here, the return date was November 30, 2016. The record was lodged December 6, 2016. Terrell filed her answering brief January 3, 2017, more than fifteen days after the lodging date. Consequently, Terrell's answer to Breen's appeal was untimely. We find no merit to Terrell's assertion that supplementation of the appellate record with an amended judgment affected the date of lodging.[2] Accordingly, Terrell's answer to Breen's appeal is dismissed.
*636 SPECIAL MOTION TO STRIKE
A special motion to strike is an extraordinary procedural mechanism that allows for the summary dismissal of certain meritless lawsuits that, merely by being filed, chill the valid exercise of the constitutional right of free speech and of petition for redress of grievances. See La. Code Civ. Pro. art. 971 ; 1999 La. Acts 734, § 2; see also Shelton v. Pavon , 17-0482 (La. 10/18/17), --- So.3d ----, ---- (2017 WL 4737111). A defendant asserting a special motion to strike bears the initial burden of proving the plaintiff's cause of action is subject to such a motion by making a prima facie showing that her comments are protected by either the right of petition or of free speech under either the United States or Louisiana constitutions and in connection with a public issue. La. Code Civ. Pro. art. 971 ; Shelton , --- So.3d at ---- ; Thinkstream, Inc. v. Rubin , 06-1595 (La. App. 1 Cir. 9/26/07), 971 So.2d 1092, 1100, writ denied , 07-2113 (La. 1/7/08), 973 So.2d 730. If a defendant satisfies this initial burden, the burden shifts to the plaintiff to demonstrate a probability of success on the claim. La. Code Civ. Pro. art. 971 ; Shelton , --- So.3d at ---- ; Thinkstream , 971 So.2d at 1100.
A ruling on a special motion to strike is reviewed de novo on appeal to determine whether the trial court was legally correct. See Roper v. Loupe , 15-1956, 2016 WL 6330407, p.3 (La. App. 1 Cir. 10/28/16). The appellate court gives no special weight to the trial court findings, but exercises its constitutional duty to review questions of law and renders a judgment on the record. Bayhi v. Louisiana Television Broadcasting, LLC , 17-0100, 2017 WL 4082241, p.4 (La. App. 1 Cir. 9/15/17) ; Starr v. Boudreaux , 07-0652 (La. App. 1 Cir. 12/21/07), 978 So.2d 384, 388.
Our initial consideration is whether Arndt and Maestri, as the parties asserting the special motion to strike, met their burden of demonstrating that (1) the suit stems from an act related to free speech, and (2) the speech is connected to a public issue. See Shelton , --- So.3d at ----. Article 971 specifically provides that an "[a]ct in furtherance of a person's right of ... free speech under the United States or Louisiana Constitution in connection with a public issue" includes, but is not limited to, "[a]ny ... conduct in furtherance of the exercise of ... the constitutional right of free speech in connection with a public issue or an issue of public interest." Thus, whether Breen's claims are subject to a special motion to strike depends on whether the comments of the defendants were about a public issue or issue of public interest.
A public issue is a matter of public interest or public concern. See Roper , 2016 WL 6330407 at p.4 ; Starr , 978 So.2d at 391. Speech in relation to a matter of public concern is speech "relating to any matter of political, social, or other concern to the community." Connick v. Myers , 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983) ; Shelton , --- So.3d at ----. Suits involving private disputes between private parties generally fall outside the ambit of Article 971. Shelton , ---So.3d at ----. To determine if speech is a matter of public concern, the court must consider the content, form, and context of the statements as revealed by the entire record. See Connick , 103 S.Ct. at 1690.
The allegedly defamatory comments relate to Breen shooting and killing her husband and the criminal investigation leading to the decision to not charge Breen with murder. The evidence filed with the motion shows the local media published multiple news stories related to the shooting, the St. Tammany Parish Coroner classifying Dr. Breen's death as a homicide, the investigation by the St. Tammany Parish Sheriff's *637 office, acts by Breen related to Dr. Breen's family and estate and, ultimately, the decision not to prosecute Breen. The affidavits of both Arndt and Maestri establish that they live in St. Tammany Parish and the internet groups they joined were created specifically to share views and feelings on the topics being reported in the local media, including whether Breen should be criminally prosecuted.
"[O]ne of society's most basic tasks is that of protecting the lives of its citizens and one of the most basic ways in which it achieves the task is through criminal laws against murder." Gregg v. Georgia , 428 U.S. 153, 226, 96 S.Ct. 2909, 2949, 49 L.Ed.2d 859 (1976) (White, J., concurring). Long ago the United States Supreme Court explained, "In criminal prosecutions the government is acting simply as the instrument of the public in enforcing penal laws for the protection of society. In that enforcement all citizens are interested." United States v. Wood , 299 U.S. 123, 149, 57 S.Ct. 177, 186, 81 L.Ed. 78 (1936) ; see also Kennedy v. Sheriff of East Baton Rouge , 05-1418 (La. 7/10/06), 935 So.2d 669, 683 (recognizing that the possible commission of a crime is a matter affecting the public interest). Breen admitted shooting and killing her husband. Whether she was legally justified in doing so, and whether she would be criminally prosecuted for murder, was a matter of public concern in the community within the meaning of Article 971.
Breen argues that since the media discussed "the abundant facts indicating she acted lawfully in self-defense," and because no facts were shown or reported to indicate she murdered her husband, there was no public debate on the issue. She notes that all law enforcement investigations concluded the shooting was justified and that she was "cleared" by a St. Tammany Parish grand jury of any criminal culpability.[3] The grand jury decision not to indict Breen does not remove the matter from public concern. An investigation alone can be a matter of public concern. A grand jury proceeding is but one step in the investigatory process. The law is clear that "[t]he failure or refusal of a grand jury to indict a defendant does not preclude a subsequent indictment by the same or another grand jury, or the subsequent filing of an information or affidavit against [her], for the same offense." La. Code Crim. Pro. art. 386 ; Does v. Foti , 11-0014 (La. App. 1 Cir. 12/8/11), 81 So.3d 101, 109, writ denied , 12-0057 (La. 3/2/12), 84 So.3d 537. The fact that Breen was not arrested or charged, and a grand jury decided not to indict her, does not remove the matter from public concern.[4]
We find that Arndt and Maestri met their burden of establishing that their comments related to Dr. Breen's death and whether Breen should be criminally prosecuted for killing him constitute a matter of public concern. Having satisfied their initial burden of proof on the special motion to strike, the burden then shifted to Breen to establish, through pleadings *638 and supporting affidavits stating the facts upon which liability is based, a probability of success on her defamation claims. See La. Code Civ. Pro. art. 971A.
Defamation is a tort involving the invasion of a person's interest in his or her reputation and good name. Costello v. Hardy , 03-1146 (La. 1/21/04), 864 So.2d 129, 139. To prevail on a defamation claim, the plaintiff must prove by a preponderance of the evidence (1) defamatory words, (2) publication, (3) falsity, (4) malice, and (5) resulting injury. Starr, 978 So.2d at 389 ; Patton v. O'Bannon , 11-0989, 2011 WL 6754099, p. 3 (La. App. 1 Cir. 12/21/11). Thus, for a statement to be actionable, it must be false, defamatory, and concern another. Fitzgerald v. Tucker , 98-2313 (La. 6/29/99), 737 So.2d 706, 716. However, many statements, though objectionable, are protected by constitutional guarantees of free speech. See Fitzgerald , 737 So.2d at 716.
Speech on matters of public concern enjoys enhanced constitutional protection. See Romero v. Thomson Newspapers (Wisconsin), Inc. , 94-1105 (La. 1/17/95), 648 So.2d 866, 869, cert. denied , 515 U.S. 1131, 115 S.Ct. 2556, 132 L.Ed.2d 810 (1995). "[A] statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection." Milkovich v. Lorain Journal Co. , 497 U.S. 1, 20, 110 S.Ct. 2695, 2706, 111 L.Ed.2d 1 (1990) ; see also Romero , 648 So.2d at 870. This is because a statement of opinion based totally on the speaker's subjective view, without expressly stating or implying the existence of underlying facts, is a purely subjective statement that can be neither true nor false. Bussie v. Lowenthal , 535 So.2d 378, 381 (La. 1988). The constitutional protection for statements of opinion applies in all cases, regardless of whether the plaintiff is a public figure. Bussie , 535 So.2d at 381 n.6 ; Mashburn v. Collin , 355 So.2d 879, 885 (La. 1977).
Whether a statement constitutes a constitutionally protected assertion of opinion is a question to be resolved by the court. See Fitzgerald , 737 So.2d at 716. This requires examination of the statements and the circumstances under which they were made. Mashburn , 355 So.2d at 887. The Louisiana Supreme Court has explained:
In determining whether an expression is a statement of fact or opinion under the common law, words must be read in their context. Words which, taken by themselves, would appear to be a positive allegation of fact, may be shown by the context to be a mere expression of opinion or argumentative influence. On the other hand, if a statement, ostensibly in the form of an opinion, is apparently based on facts regarding the plaintiff or his conduct that have not been stated by the defendant or assumed to exist by the parties to the communication, the expression gives rise to the inference there are undisclosed facts that justify the opinion. In such a case the expression, although in the form of an opinion, in reality implies a statement of fact, which is not usually protected by the common law privilege. In order for a statement to be defended as fair comment it must be recognizable by the ordinary reasonable person as opinion and not as a statement of fact.
Mashburn , 355 So.2d at 885-86 (footnotes omitted). Reaffirming this required analysis in a later case, the court stated, "The question of whether a statement is one of fact or opinion depends upon the circumstances in which the statement was made, and the reasonable inferences which may be drawn from a statement of opinion will *639 vary depending upon the circumstances of the case." Fitzgerald , 737 So.2d at 718.
The claims against Arndt and Maestri are premised on single internet posts attributed to each of them. Neither post is dated, but the record establishes they were made before Breen filed suit on January 6, 2016, which was less than one year after Dr. Breen's death on March 1, 2015. The record additionally establishes that during that year, the media focused continuous attention on the shooting, the classification of the death as a homicide by the coroner, the claim that Breen acted in self-defense during a violent altercation, the legal "battle" between Breen and Dr. Breen's heirs over his estate, the removal by Breen of items from Dr. Breen's office, the criminal investigation into Dr. Breen's death, protests expected at the courthouse related to these matters, the decision not to arrest Breen, court filings recounting the self-defense claim, a civil wrongful death suit against Breen, and this defamation suit.
The allegedly defamatory statement attributed to Arndt is:
I guarantee that she had this plot in the makings for sometime. There is no doubt that she staged all the abuse charges against him knowing she could use it later. She is a wicked person.
Arndt averred in her affidavit that she had known Dr. Breen for twenty-one years, believed he saved the lives of her daughter and grandchild, and was sad about his death. She joined a Facebook group called "Rest In Peace Dr. Breen," for people grieving Dr. Breen's death. She recalled reading that the coroner classified Dr. Breen's death as a homicide and expressed frustration with the decision not to arrest Breen. Arndt stated she joined what she believed was a closed Facebook group called "Justice For Dr. Breen," for people angry and upset that Breen was not arrested and who wanted to discuss whether Breen should be arrested and prosecuted. Arndt averred that any comment she posted was strictly her opinion that Breen should be arrested.
The allegedly defamatory statement attributed to Maestri is:
The more I learn about this tragedy, the more I am convinced that Dr. Breen's death was premeditated murder and not manslaughter in a moment of passion. How, in God's name, has this woman avoided arrest? ? ? My most sincere sympathy to the Breen children that they must suffer further as they grieve the loss of their father.
Maestri averred in her affidavit that she had known Dr. Breen for two years, and considered him a source of strength and support for her family. She stated she posted her condolences to his family on the funeral home's grief page, where she also read about the closed Facebook group called "Rest In Peace Dr. Breen," for people grieving the death of Dr. Breen. Maestri stated she believed the purpose of the group was to read about and try to understand what happened to Dr. Breen. Maestri also stated she joined the Facebook group called "Justice For Dr. Breen," which helped her understand the loss of Dr. Breen. She indicated she is still upset Breen was not arrested and outraged by what she believes is an injustice. She explained that any comment she posted was her opinion about Dr. Breen's death and whether Breen should be arrested and prosecuted.
Breen does not dispute the assertions by Arndt and Maestri that their comments were posted in internet forums dedicated to discussing Dr. Breen's death and whether she should be criminally prosecuted.
*640 [5] In making their statements, neither Arndt nor Maestri represented that they are a legal authority on the distinctions between the grades of criminal homicide and the legal definition of justifiable homicide. See La. R.S. 14:20 ; La. R.S. 14:29. Nor does either statement imply that the speaker is privy to undisclosed facts. Rather, the evidence establishes that the statements were made against a backdrop of continuous media reports fixing the public's attention on these issues, specifically whether Breen should be criminally prosecuted for killing her husband, based on the facts being reported.
When considered in context, a reasonable person considering Arndt's and Maestri's statements in the particular forums in which they were made would not believe them to be anything other than the subjective opinions of Arndt and Maestri expressing disagreement with Breen's claim that she acted in self-defense and their criticism of the decision not to criminally prosecute her. Neither statement is an actionable defamatory statement. Rather, both are constitutionally protected statements of opinion.[6] Because Breen failed to establish a probability of success on her defamation claims, the special motion to strike was properly granted.
CONCLUSION
The trial court's December 14, 2016 judgment dismissing the claims against Arndt and Maestri pursuant to the granting of a special motion to strike is affirmed. Costs of this appeal are assessed to Kacie Magee Breen.
ANSWER TO APPEAL DISMISSED; DECEMBER 14, 2016 JUDGMENT AFFIRMED.
Pettigrew, J. concurs and assign reasons
PETTIGREW, J., CONCURS, AND ASSIGNS REASONS.
I respectfully agree with the majority that the death of Dr. Breen and the investigation of his death by the law enforcement authorities was an issue of public concern. However, I must express my concerns about the defendants' statements. I suggest the statements were loose, gossipy, and reflected a lynch-mob mentality. The citizens of Louisiana should beware of the Internet and Facebook. You might find yourselves paying damages to someone.

In response to a rule to show cause issued by this court, the trial court amended the judgment on December 14, 2016, and specified that the claims were dismissed with prejudice. Considering the decretal language of the amended judgment, we maintain the appeal.

In support of her argument, Terrell cites Deutsch, Kerrigan & Stiles v. Rault , 389 So.2d 1373, 1375 (La. App. 4 Cir. 1980), writ denied , 396 So.2d 883 (La. 1981), where the fourth circuit found an answer was timely when filed within fifteen days of "the entire record" being lodged with the appellate court. That case dealt with circumstances where an entire volume was missing from the originally lodged record, and is thus factually distinguishable from this case, where the record was merely supplemented with an amended judgment issued in response to a rule to show cause order. Moreover, we find the language of Louisiana Code of Civil Procedure article 2133 clearly and explicitly requires an answer to be filed within fifteen days after the return day or the lodging of the record, whichever is later, and must be construed as written. See Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc. , 06-0582 (La. 11/29/06), 943 So.2d 1037, 1045. The parties in this case were notified that the record was lodged on December 6, 2016. Supplementation of the record did not change that date.

The record contains no evidence regarding a decision by a grand jury; however, the grand jury's decision was discussed and was not disputed during the hearing before the trial court.

Even a criminal acquittal does not prohibit an inquiry into civil liability, arguably extending the length of time the matter remains a public concern. See State v. Quatrevingt , 93-1644 (La. 2/28/96), 670 So.2d 197, 210 n.13 (recognizing that due to the lesser burden of proof, success in a civil suit does not depend on obtaining a guilty verdict in a criminal trial and referencing the O.J. Simpson matter as an example, where families of the murdered victims proceeded against Simpson in a civil matter despite a not guilty verdict in the criminal case).

Courts in other jurisdictions have recognized that internet messaging forums on topics of interest promote a looser, more relaxed communication style. E.g., Too Much Media, LLC v. Hale , 206 N.J. 209, 234-35, 20 A.3d 364, 378-79 (2011) ; Sandals Resorts Int'l Ltd. v. Google, Inc. , 925 N.Y.S.2d 407, 415-16, 86 A.D.3d 32, 43-44 (N.Y. App. Div. 2011). The comments by Arndt and Maestri evidence this in both the language and grammar used.

Because we find that neither statement implies a false and defamatory fact, we need not consider whether the statements were expressed with malice. See Romero , 648 So.2d at 870.