907 So.2d 103 (2005)
Cameron Paul FOREMAN
v.
LSU HEALTH SCIENCES CENTER, University Medical Center.
No. 2004 CA 0651.
Court of Appeal of Louisiana, First Circuit.
March 24, 2005.
*105 Michael D. Hebert, Lafayette, Counsel for Plaintiff/Appellant Cameron Paul Foreman.
Martha K. Mansfield, Baton Rouge, Counsel for Defendant/Appellee University Medical Center.
Robert R. Boland, Jr., Baton Rouge, Counsel for Appellee Allen H. Reynolds, Director State Civil Service.
Before: GUIDRY, GAIDRY, and McCLENDON, JJ.
GUIDRY, J.
Cameron Paul Foreman appeals from a decision rendered by the Louisiana Civil Service Commission (Commission), which denied his application for review. Finding no error in the Commission's decision, we affirm.

FACTS AND PROCEDURAL HISTORY
On August 13, 2002, Foreman engaged in a private discussion with two coworkers, Roxanne Walker and Carleen Sandoz, while on a break. The topics of discussion were office-related issues and past and future Town Hall meetings conducted by Senator Donald R. Cravins, which addressed *106 patient, employment, and emergency room issues at University Medical Center (UMC). During this discussion, Foreman made a racially offensive comment.
Thereafter, on September 26, 2002, Lawrence Dorsey, the hospital administrator, sent Foreman a pre-disciplinary letter advising him that the appointing authority was considering suspending him without pay for thirty days and demoting him from a RN Supervisor 2 to a RN Instructor position. The cause for the proposed discipline was the comment and corresponding violation of UMC Human Resource Policy and Procedure Number 7, Level II, number 7 and Level III, number 7. On November 15, 2002, Dorsey sent Foreman a letter advising he had carefully considered Foreman's response to the proposed disciplinary action, but that Foreman would be demoted as proposed for the reasons set forth in the pre-disciplinary letter, effective December 9, 2002. Foreman appealed this decision to the Commission.
Following a hearing, the Commission referee rendered a decision denying Foreman's appeal and specifically finding that UMC proved cause for discipline and that the penalty imposed, a demotion, was commensurate with the offense. Foreman filed an application for review with the Commission, which was denied, and this appeal followed.

STANDARD OF REVIEW
Generally, decisions of Civil Service Commission referees are subject to the same standard of review as decisions of the Commission itself. Decisions of the Civil Service Commission are subject to the same standard of review as a decision of a district court. Marcantel v. Department of Transportation and Development, 590 So.2d 1253, 1255 (La.App. 1st Cir.1991). When reviewing the Commission's findings of fact, the appellate court is required to apply the manifestly erroneous or clearly wrong standard of review. However, in evaluating the Commission's determination as to whether the disciplinary action taken by the appointing authority is based on legal cause and commensurate with the infraction, the reviewing court should not modify or reverse the Commission's order unless it is arbitrary, capricious, or characterized by an abuse of discretion. Usun v. LSU Health Sciences Center Medical Center of Louisiana at New Orleans, 02-0295, p. 4 (La.App. 1st Cir.2/14/03), 845 So.2d 491, 494. Furthermore, the error of law standard is applicable to questions of law presented in review of an administrative decision. See Adams v. Dept. Health and Hospitals, 99-1982, p. 4 (La.App. 1st Cir.9/22/00), 767 So.2d 943, 945, writ denied, 00-2917 (La.12/15/00), 777 So.2d 1227.

DISCUSSION
In Foreman's first two assignments of error, he contends that the Commission referee erred in her factual determinations. Specifically, Foreman contends that the referee erred in finding that Ms. Walker was offended by Foreman's comment and that Foreman's comment was responsible for upsetting employees, hurting feelings, and dividing people by race at UMC. However, from our review of the record, we find that a reasonable factual basis exists for the referee's findings. Ms. Walker testified that she was offended by Foreman's comment and an email sent by Ms. Walker to Foreman the day after the comment was made stated that she was offended, so upset that she could not sleep the night before, and was still angry. Further, several employees testified that they were upset when they learned of Foreman's comment, especially Lucille Richard, *107 and that racial tensions flared at UMC. Dorsey testified that word of the comment spread throughout the hospital, employees were divided by race as to the appropriateness of the proposed punishment, and at the time of the hearing, there were still discussions at UMC about Foreman's comment.
Foreman argues that the Commission referee erred because the comment was made during a private conversation and would not have become known to other people at UMC had it not been for Ms. Walker's recounting of the event. Further, Foreman argues that Ms. Walker, an African American woman, previously referred to herself in racially derogatory terms, calling herself a "black b____," and that her demeanor immediately following Foreman's comment did not indicate that she was offended. In response to Foreman's first argument, we note that whether Ms. Walker was responsible for making the comment known to other UMC personnel or not is irrelevant, as there would not have been anything to recount had Foreman not made the comment in the first instance. Further, as to Foreman's version of events following the comment, we reiterate that factual findings of a Commission referee are subject to manifest error review, and where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). As such, we find no manifest error in the Commission referee's factual determinations.
Foreman further alleges that the Commission referee erred in finding that the appointing authority proved cause for the disciplinary action taken against him because his conduct does not satisfy the express terms of UMC policy Number 7, Level II(7) or Number 7, Level III(7). A permanent classified civil service employee cannot be disciplined without cause. La. Const. Art. 10, § 8. Cause exists when the employee's conduct is detrimental to the efficient and orderly operation of the public service that employed him. Bannister v. Department of Streets, 95-0404, p. 8 (La.1/16/96), 666 So.2d 641, 647. In order to modify or reverse the Commission referee's determination regarding cause in this matter, we must first find that the Commission referee's decision was arbitrary, capricious, or an abuse of discretion. Usun, 02-0295 at p. 6, 845 So.2d at 495. UMC policy Number 7, Level II(7) provides that acting in a disrespectful manner toward patients, visitors, or fellow employees results in a final written warning or suspension. UMC Policy Number 7, Level III(7) provides that using vile, intemperate, or abusive language toward patients, visitors, or employees will result in immediate suspension or reduction in pay and review for termination. From our review of the record, we do not find that the Commission referee erred in finding that Foreman's conduct falls within these two policy provisions.
During their discussion, Foreman, Ms. Walker, and Ms. Sandoz discussed the previous and upcoming Town Hall meetings. The discussion revolved around the participants' behavior at the previous meeting, particularly the bickering, hostile atmosphere, and resemblance to a mob scene, and whether Foreman, Ms. Walker, or Ms. Sandoz would attend the upcoming meeting. During this discussion, Foreman made the comment "that's those n____s" or he was not going to go and sit with all "the n____s."[1]
*108 Foreman does not argue that the language used was not disrespectful, vile, intemperate, or abusive. Rather, Foreman contends that the comment was not "toward" and did not refer to Ms. Walker, or to any other employee, visitor, or patient of UMC. According to Foreman, he was not sure to whom the comment referred. However, Merriam-Webster's New Collegiate Dictionary 1284 (10th ed.1998), lists one of the meanings of "toward" as "in the direction of." At the hearing, Ms. Walker testified that Foreman turned to her and made the comment. Accordingly, we find no error in the Commission referee's finding that Foreman violated UMC's policies.
Additionally, we find no error in the conclusion that Foreman's conduct impaired the efficient and orderly operation of UMC. Dorsey testified that Foreman's comment created tension and was still talked about at UMC as of the date of the hearing. Further, several UMC employees testified that they would not be comfortable with a supervisor who used the word "n____." Finally, Ms. Richard testified that she was upset upon learning of Foreman's comment, so much so that she had to take time off from work and receive mental health treatment. Therefore, based on Foreman's violation of UMC policy provisions and the fact that his conduct impaired the efficient and orderly operation of UMC, we find no error in the Commission's determination that UMC proved cause for discipline.
Further, we find no error in the Commission's finding that the discipline utilized in the case, demotion, was commensurate with the offense. UMC policy Number 7, Level III(7) specifically provides for reduction in pay and even allows for the more severe discipline of termination. Foreman cites several cases in his brief and suggests that based on these cases, the penalty of demotion is disproportionate to the severity of his offense. However, none of the cases relied on by Foreman are fairly comparable to the present case in terms of the nature of the cause for discipline, particularly given the discretion with which the agency and Commission are vested in imposing discipline. Therefore, in accordance with UMC policy provisions, and based on the facts as previously outlined, specifically considering Foreman's supervisory position, we do not find that the Commission's decision to uphold Foreman's demotion was arbitrary, capricious, or an abuse of discretion.
In his final assignment of error, Foreman contends that the Commission referee committed an error of law in failing to find that his comment was protected expression under the First Amendment.[2] As a public employee, Foreman's speech is generally protected by the First Amendment. Connick v. Myers, 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). However, a public employee does not possess an absolute, unfettered right to free speech. Wright v. Glynn County Board of Commissioners, 932 F.Supp. 1476, 1481 (S.D.Ga.4/30/96). It is only when a public employee speaks as a citizen upon matters of public concern, rather than as an employee upon matters only of personal interest, that First Amendment protection lies. Connick, 461 U.S. at 147, 103 S.Ct. at 1690.
The Supreme Court has described speech upon matters of public concern *109 as "relating to any matter of political, social, or other concern to the community." Connick, 461 U.S. at 146, 103 S.Ct. at 1690. Further, whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record. Connick, 461 U.S. at 147-148, 103 S.Ct. at 1690. An employee's intent to disseminate his statement's content to the public and his motivation in making the statement are also relevant factors in determining whether a statement is of public concern. Vinci v. Nebraska Department of Correctional Services, 253 Neb. 423, 433, 571 N.W.2d 53 (1997), 253 Neb. 423, 571 N.W.2d 53, 60; see also Wright, 932 F.Supp. at 1481.
Foreman asserts that his comment touched on a matter of public concern because it was made during a conversation about the effectiveness of the Town Hall meetings, which were conducted by a public official and related to the quality of care at a public hospital. While the general topic of the discussion may relate to a matter of public concern, it is difficult to conclude that the racist comment made by Foreman related to any legitimate matter of political, social, or other concern to the community. Further, the record is devoid of any evidence that Foreman intended that his comment be made public. In fact, Foreman disavows any responsibility for the comment being spread throughout UMC and brought up before the second Town Hall meeting. Additionally, Foreman testified that he did not "pre-think" his use of the word and was not proud of what he said. Clearly, Foreman's use of the word "n____" was incidental to the message of the discussion, being the disorderly and ineffective nature of the Town Hall meetings, and could only have been motivated by personal interests and prejudice. An employee who makes an unprotected statement is not immunized from discipline by the fact that the statement is surrounded by protected statements. Vinci, 253 Neb. at 432, 571 N.W.2d at 60; see also Dambrot v. Central Michigan University, 55 F.3d 1177, 1187 (6th Cir.1995). As such, we find no error in the Commission's finding that Foreman's comment was not protected speech under the First Amendment.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the State Civil Service Commission. All costs of this appeal are to be borne by the appellant, Cameron Paul Foreman.
AFFIRMED.
GAIDRY and McCLENDON, JJ., concur without reasons.
NOTES
[1] Foreman and Ms. Walker's versions of how the comment was made differ slightly.
[2] Foreman also asserts that his comment is protected expression of political beliefs in accordance with La. Const. art. X, § 8(B). We question whether this issue was raised in the administrative proceeding below and whether it is properly before us on appeal. However, even if this issue is properly before us, we do not find that the use of a racial slur qualifies as an expression of a political belief.