STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2018 CA 1480

RANDALL KLING

VERSUS

LOUISIANA DEPARTMENT OF REVENUE

JUDGMENT RENDERED: **JUL 1 8 2019**

* * * * * * *

Appealed from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge • State of Louisiana
Docket Number 602,141 • Section 23

The Honorable William A. Morvant, Judge Presiding

* * * * * * *

Benjamin M. Castoriano
Renee G. Culotta
New Orleans, Louisiana

ATTORNEYS FOR APPELLANT
DEFENDANT—Louisiana
Department of Revenue

Jaqueline B. Wilson
Baton Rouge, Louisiana


J. Arthur Smith, III
Seth M. Dornier
Baton Rouge, Louisiana

ATTORNEYS FOR APPELLEE
PLAINTIFF—Randall Kling


* * * * * * *

BEFORE: WELCH, CHUTZ, AND LANIER, JJ.

**WELCH, J.**

Randall Kling—a former classified civil service employee with probationary status—brought an action against his former employer, the Louisiana Department of Revenue ("Department"), Office of Alcohol and Tobacco Control ("ATC"), alleging a free speech retaliation claim in violation of La. Const. Art. I, § 7. Following a jury trial, the jury rendered its verdict in favor of Mr. Kling and against the Department on his free speech retaliation claim and awarded damages to Mr. Kling for lost wages, mental anguish and distress, and loss of enjoyment of life in the total amount of $393,045.00. In this appeal, the Department challenges the district court's January 16, 2018 judgment rendered in accordance with the jury's verdict. For the following reasons, we affirm in part, and reverse in part.

## FACTS AND PROCEDURAL HISTORY

Mr. Kling was hired by the ATC[1] on September 30, 2010, as an "Agent 4" with probationary status.[2] On March 10, 2011, Mr. Kling and other ATC employees submitted a complaint ("Complaint") to Cynthia Bridges, the Department's then-Secretary. The Complaint alleged that then-ATC Commissioner, Troy Hebert, committed official misconduct, including violating state law and Department/ATC policies and directives, engaged in offensive and dangerous behavior, and threatened, harassed, and intimidated his employees. The Complaint also detailed the personal employment-related grievances of twelve named ATC employees, including Mr. Kling. The Complaint was signed "Concerned Command Staff and Employees." Mr. Kling personally submitted

---

[1] The ATC is an administrative unit established within the Department, headed by a commissioner who is appointed by the governor. See La. R.S. 26:791. The ATC Commissioner is the appointing authority of all ATC employees, who has the exclusive right to "establish positions within his office and make appointments thereto; abolish positions; transfer duties between positions; or assign duties to, direct and control the work of, and transfer, promote, demote, remove, and otherwise change the status of employees subject to his jurisdiction." See La. R.S. 26:796, and Civil Service Rule 1.4.

[2] Mr. Kling was previously employed by the ATC from July 2003 until November 2008, when he voluntarily resigned his position.

three additional complaints in March 2011 regarding Mr. Hebert's actions to Dee Everett, then-Director of Human Resources for the Department. On March 30, 2011, the ATC separated Mr. Kling from his employment.

On May 26, 2011, Mr. Kling filed this lawsuit against the Department, alleging that the ATC terminated him from his position in retaliation for submitting complaints regarding Mr. Hebert in violation of the exercise of his free speech rights under La. Const. Art. I, § 7. Mr. Kling alleged that his complaints addressed matters of public concern, including misconduct within a law enforcement agency, sexual harassment perpetrated on state workers, gender discrimination, and systematic employment practices that adversely affected the functioning of the ATC by placing the safety of the ATC officers in jeopardy, damaging the morale of employees, and causing a mass exit of qualified employees. The relief Mr. Kling sought included reinstatement to his position, an award of lost wages, an award of fringe benefits and retirement contributions, loss of enjoyment of life damages, and mental anguish and distress damages.

Following a four-day jury trial, the jury rendered its verdict in favor of Mr. Kling, and against the Department, finding that Mr. Kling had engaged in speech on a matter of public concern and that his speech was a substantial motivating factor in his termination. The jury awarded Mr. Kling special damages in the amount of $243,045.00 for lost wages and general damages in the amount of $75,000.00 for mental anguish and distress and $75,000.00 for loss of enjoyment of life. The district court signed a judgment in conformity therewith on January 16, 2018, awarding Mr. Kling damages in the amount of $393,045.00, together with legal interest from May 26, 2011 (the date of Mr. Kling's request for service of the petition), until the date of the signing of the judgment, and thereafter, at the

3

rate fixed in La. R.S. 9:3500[3] and La. R.S. 13:4202 until the judgment is paid. The Department was assessed all district court costs in the amount of $9,538.06. The Department now appeals.

Mr. Kling filed an answer to the appeal pursuant to La. C.C.P. art. 2133, seeking a reversal of the district court's January 16, 2018 judgment to the extent it denied his claim for reinstatement and denied his claim for 6% interest on the damages award in accordance with La. R.S. 13:5112(c). Mr. Kling is also seeking an assessment of district court and appellate court costs to the Department.

## LAW AND DISCUSSION

Mr. Kling claims that the Department terminated his employment in retaliation and in violation of his free speech rights. To prevail in a retaliation claim, a public employee must allege facts demonstrating (1) that his speech involved a matter of public concern; (2) that he has suffered an adverse employment action for exercising his right to free speech; and (3) that the exercise of free speech was a substantial or motivating factor in the adverse employment action. **Johnson v. S. Univ.**, 2000-2615 (La. App. 1st Cir. 12/28/01), 803 So.2d 1140, 1146.

### Assignment of Error No. 1: Speech on a Matter of Public Concern

The Department contends that the jury erred in determining that Mr. Kling engaged in protected speech on a matter of public concern. The speech at issue consists of the March 10, 2011 Complaint that was drafted and submitted by "Concerned Command Staff and Employees."

The First Amendment of the United States Constitution provides, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of

_____

[3] The district court's judgment incorrectly referred to La. R.S. 9:3500 as La. R.S. 42:3500.

4

grievances." Article I, § 7 of the Louisiana Constitution provides, "No law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of that freedom."

As a public employee, Mr. Kling's speech is generally protected by the United States and Louisiana Constitutions. See **Connick v. Myers**, 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983); **Breen v. Holmes**, 2016-1591 (La. App. 1st Cir. 12/7/17), 236 So.3d 632, 638, writ denied, 2018-0049 (La. 3/2/18), 269 So.3d 708. All citizens have the right to criticize public officials on their official conduct and to comment on matters of public concern. **Tanner v. City of Baton Rouge**, 422 So.2d 1263, 1267 (La. App. 1st Cir. 1982), writ denied, 429 So.2d 128 (La. 1983). A statement of opinion relating to matters of public concern which does not contain a provably false factual connotation receives full constitutional protection because such statements of opinion are based totally on the speaker's subjective view, without expressly stating or implying the existence of underlying facts, and are purely subjective statements that can be neither true nor false. **Breen**, 236 So.3d at 638. This right is not only important to the individual, but also is essential to the democratic process. Free criticism of official conduct and free speech on matters of public interest are essential to ensuring the lawful and proper functioning of the government. **Tanner**, 422 So.2d at 1267.

However, a public employee does not possess an absolute, unfettered right to free speech. **Foreman v. LSU Health Scis. Ctr.**, 2004-0651 (La. App. 1st Cir. 3/24/05), 907 So.2d 103, 108, writ denied, 2005-1084 (La. 6/24/05), 904 So.2d 742. The state, as an employer, has a legitimate interest and right in regulating to some degree the speech of its employees. **Tanner**, 422 So.2d at 1267. Whether the speech of a public employee is constitutionally protected is determined by balancing the interest of the employee, as a citizen, in commenting upon matters of

5

public concern against the interest of the government (national, state, or local), as an employer, in promoting the efficiency of the public services it performs through its employees. See **Pickering v. Bd. of Educ.**, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734-35, 20 L.Ed.2d 811 (1968). It is only when a public employee speaks as a citizen upon matters of public concern, rather than as an employee upon matters only of personal interest, that First Amendment protection lies. **Foreman**, 907 So.2d at 108.

The United States Supreme Court has described speech upon matters of public concern as "relating to any matter of political, social, or other concern to the community." **Foreman**, 907 So.2d at 108-09 (citing **Connick**, 461 U.S. at 146, 103 S.Ct. at 1690). Speech rises to the level of public concern if an individual speaks primarily as a citizen rather than as an employee, or if the information conveyed would be of relevance to the public's evaluation of the performance of governmental agencies. **Dodds v. Childers**, 933 F.2d 271, 273 (5th Cir. 1991). The existence of an element of personal interest on the part of an employee in the speech does not prevent finding that the speech as a whole raises issues of public concern. **Id.** On the other hand, an employee cannot transform a personal conflict into an issue of public concern simply by arguing that individual concerns might have been of interest to the public under different circumstances. **Id.** The mere fact that the topic of the employee's speech was one in which the public might or would have had a great interest is of little moment because almost anything that occurs within a public agency could be of concern to the public. **Id.** In analyzing whether speech constitutes a matter of public concern, the focus is on the motive of the speaker "*i.e.*, whether the speech *was calculated* to disclose misconduct or dealt with only personal disputes and grievances with no relevance to the public interests." **Normand v. City of Baton Rouge, Police Dep't**, 572 So.2d 1123,

1126 (La. App. 1st Cir. 1990) (citing **McEvoy v. Shoemaker**, 882 F.2d 463, 466 (10th Cir. 1989)) (emphasis in original).

Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record. **Blackwell v. Laque**, 275 F.App'x 363, 369 (5th Cir. 2008); **Foreman**, 907 So.2d at 109. An employee's intent to disseminate his statement's content to the public and his motivation in making the statement are also relevant factors in determining whether a statement is of public concern. **Id.** Whether the speech at issue is on a matter of public concern is a question of law that must be determined by the court using the *de novo* standard of review. **Dodds**, 933 F.2d at 273; **McGowan v. Hous. Auth. of New Orleans**, 2012-1418 (La. App. 4th Cir. 3/27/13), 113 So.3d 1143, 1152 (citing **Salge v. Edna Indep. Sch. Dist.**, 411 F.3d 178, 184 (5th Cir. 2005)); see **TCC Contractors, Inc. v. Hosp. Serv. Dist. No. 3 of Par. of Lafourche**, 2010-0685 (La. App. 1st Cir. 12/8/10), 52 So.3d 1103, 1108. Our review requires examination of the statements and the circumstances under which they were made. **Breen**, 236 So.3d at 638.

The Department contends that Mr. Kling was not involved in drafting or submitting any portion of the Complaint apart from his individualized section. The Department argues that Mr. Kling's speech consisted solely of his individualized section, which contains internal employment-related issues—*i.e.*, his removal from a position; reassignment of work duties and location; no reimbursement for travel-related expenses—that are of a personal, not public, nature.

The sixteen-page Complaint begins with an introductory section, which includes the following:

> The Command staff and employees of the [ATC] have significant concerns which, we feel, must be brought to your attention. These concerns include threats and intimidation directed by Assistant Secretary Troy Hebert toward employees of this office; Mr. Hebert's dangerous

7

directives and behavior, and his numerous violations of ATC policy, Department of Revenue Policy, and state law.

[...]

Further, ATC requests that the Department of Revenue conduct a complete investigation regarding the following alleged violations of policy, procedure, rules, and laws, precipitated by Mr. Hebert[.]

The Complaint then lists forty-five bullet points that contain a number of allegations of violations of laws and policies. It is well-established that speech relating to official misconduct almost always involves matters of public concern. **Charles v. Grief**, 522 F.3d 508, 514 (5th Cir. 2008). The disclosure of misbehavior by public officials is a matter of public interest and therefore deserves constitutional protection. **Brawner v. City of Richardson, Tex.**, 855 F.2d 187, 191-92 (5th Cir. 1988).

At the end of the bulleted list, the Complaint states that "[i]n addition to the alleged infractions listed above, a number of employees have been the direct recipient of Mr. Hebert's aggressive behavior. In the following reports, these employees will provide the details of the harassment and intimidation that they have endured at the hands of Mr. Hebert[.]" The following section is titled, "Harassment and Intimidation of Employees," and contains individual sub-sections detailing the personal employment-related grievances of twelve ATC employees, including Mr. Kling.

The Department concedes in its brief on appeal that the introductory section (including the bulleted list) constitutes speech on a matter of public concern by "whoever authored that section." However, the Department avers that Mr. Kling had no part in drafting the introductory section and was only involved in the drafting of his individualized section and that a free speech retaliation claim based on the speech of others does not exist. Because Mr. Kling's individualized section contained speech of a personal, not public, nature, the Department argues that Mr.

Kling did not engage in protected speech on a matter of public concern, and his free speech retaliation claim should fail.

We note that the trial court concluded, and we agree, that Mr. Kling's individual section contained in the Complaint did not address a matter of public concern, nor has Mr. Kling made that contention. We agree. It is the introductory section (including the bulleted list), which constitutes speech on a matter of public concern.

Groups of persons have a right to associate for the purpose of engaging in protected speech. See **Roberts v. U.S. Jaycees**, 468 U.S. 609, 618 & 622, 104 S.Ct. 3244, 3249 & 3252, 82 L.Ed.2d 462 (1984) ("An individual's freedom to speak, to worship, and to petition the government for the redress of grievances could not be vigorously protected from interference by the State unless a correlative freedom to engage in group effort toward those ends were not also guaranteed."). See also **Louisiana Debating & Literary Ass'n v. City of New Orleans**, 42 F.3d 1483, 1493 (5th Cir. 1995), cert denied, 515 U.S. 1145, 115 S.Ct. 2583, 132 L.Ed.2d 832 (1995). The issue is whether Mr. Kling was involved in authoring the introductory section such to make it his own speech.

The record demonstrates that the Complaint was prepared and submitted by ATC employees who identified themselves as "Concerned Command Staff and Employees." While Mr. Kling did not personally draft the entirety of the Complaint, nor did he read the entire Complaint prior to its submission, Mr. Kling testified that he "joined in" the Complaint and additionally prepared his individual statement for inclusion in the Complaint, which comprises pages seven through ten. Mr. Kling stated that the concerned employees held a meeting regarding the Compliant. While he was unable to attend the meeting in person, Mr. Kling testified that he participated in the meeting by calling in and speaking to the group on the telephone. Mr. Kling further testified that he was aware of the Complaint's

9

general allegations and had no reason to doubt the veracity of the general allegations. The Complaint was submitted with Mr. Kling's knowledge and approval.

The existence of Mr. Kling and the other employee's individual sections in the Complaint, which contain obvious elements of personal interest, does not prevent a finding that the speech contained in the Complaint *as a whole* raises issues of public concern. See **Dodds**, 933 F.2d at 273. It is clear that the speech contemplated by the introductory section of the Complaint was calculated by the other ATC employees who submitted the letter, including Mr. Kling, to disclose official misconduct on the part of Mr. Hebert, which is relevant to the public interest. See **Normand**, 572 So.2d at 1126. Accordingly, we conclude that Mr. Kling was one of the "Concerned Command Staff and Employees" who engaged in the speech contained in the introductory section of the Complaint. Because that speech complained of misconduct within the ATC, it is classified as speech addressing a matter of public concern.

Given the entirety of the Complaint, we are convinced that that Mr. Kling's principal purpose in joining in the Complaint along with the other ATC employees was to disclose "malfeasance on the part of government officials in the conduct of their official duties," in this case, Mr. Hebert. See **Koch v. City of Hutchinson**, 847 F.2d 1436, 1445 (10th Cir.), cert. denied, 488 U.S. 909, 109 S.Ct. 262, 102 L.Ed.2d 250 (1988). Accordingly, the Department's Assignment of Error No. 1 is without merit.

## Assignment of Error Nos. 2 and 3: Lost Wages

The Department argues that the jury's award of lost wages to Mr. Kling constituted legal error because Mr. Kling was a classified civil service employee, which gives the Civil Service Commission exclusive jurisdiction over awards of lost wages to classified employees. Mr. Kling counters that he was a probationary

employee at all times relevant hereto, giving the Nineteenth Judicial District Court, not the Civil Service Commission, jurisdiction over his free speech retaliation claim, including any potential awards of back pay and reinstatement.

The Department further argues that the jury abused its discretion in awarding Kling lost wages in the amount of $243,045 (the equivalent of over five years of pay); as a classified probationary employee, Mr. Kling only worked for the ATC for six months prior to his separation, and, under LDOR, ATC, and Civil Service Rules, he could only remain in his position as a probationary status employee for an additional six months. Therefore, his lost wages should have been capped.

The civil service provisions in the Louisiana Constitution and the Civil Service Commission's rules are designed to secure adequate protection to career public servants from political discrimination and favoritism. In promoting the merit system, the intent of these laws is to guarantee the security and welfare of public service. See La. Const. Art. X, § 1; **Sanders v. Dep't of Health and Human Res.**, 388 So.2d 768, 771 (La. 1980). To further these goals, and in addition to its primary function as a quasi-judicial body, the Civil Service Commission is empowered to generally supervise the civil service system and to establish rules for that system's administration. **Bannister v. Dep't of Streets**, 95-0404 (La. 1/16/96), 666 So.2d 641, 645. The Civil Service Commission Rules have the effect of law. La. Const. Art. X, § 10(A)(4); **Sanders**, 388 So.2d at 770.

Civil Service Rule 4.1(b) provides that "all officers and employees of the State of Louisiana are in the Classified Service."[4] Classified civil service employees are identified by their appointment[5] as either "permanent" or "probationary" status employees. Pursuant to Civil Service Rule 1.34, a regular or

---

[4] Subject to the exceptions in Civil Service Rule 4.1(c) and (d), none of which apply to Mr. Kling.

[5] "'Appointment' means an offer by an appointing authority to a qualified person of employment in a classified position and the acceptance of such offer." Civil Service Rule 1.5.

11

permanent appointment "means the status attained by a classified employee upon the successful completion of his probation period." See also La. R.S. 33:2393(27) ("regular employee" is employee who has been appointed to a position in the classified service after completing work test period). In turn, a probationary appointment "means the appointment of a person to serve a working test period in a position." Civil Service Rule 1.26; see also La. R.S. 33:2417.[6]

It is well established that the Civil Service Commission has exclusive jurisdiction over classified civil service employer-employee disputes that are employment related, including, but not limited to: the power to adopt rules for regulating employment, promotion, demotion, suspension, reduction in pay, removal, certification, qualifications, political activities, employment conditions, compensation, and disbursements to employees, and other personnel matters and transactions, as well as the power and authority to hear and decide all removal and disciplinary cases. See La. Const. Art. X, §§ 10(A)(1)(a) and 12A; **State Civil Serv. Comm'n v. Dep't of Pub. Safety Dir.**, 2003-1702 (La. 4/14/04), 873 So.2d 636, 644.

The Civil Service Commission's jurisdiction to hear appeals is limited to two categories of claims: (1) discrimination claims under La. Const. Art. X, § 8(B);[7] and (2) removal or disciplinary claims under La. Const. Art. 10, §§ 8(A)[8] and 12(A).[9] See **Cope v. Dep't of Children & Family Servs.**, 2014-1076 (La.

---

[6] Every person appointed to a position of classified service shall be tested by a "working test" which begins immediately upon appointment for a time not less than six months or more than one year. After the first two months of the working test period, a probationary status employee may be removed by the appointing authority if, in the opinion of the appointing authority, the employee is unable or unwilling to satisfactorily perform duties or the employee's habits and dependability do not merit continued employment. La. R.S. 33:2417.

[7] "No classified employee shall be discriminated against because of his political or religious beliefs, sex, or race." La. Const. Art. X, § 8(B).

[8] "No person who has gained permanent status in the classified state or city service shall be subjected to disciplinary action except for cause expressed in writing." La. Const. Art. X, § 8(A).

[9] "The State Civil Service Commission shall have the exclusive power and authority to hear and decide all removal and disciplinary cases...." La. Const. Art. X, § 12(A).

12

App. 1st Cir. 4/24/15), 167 So.3d 1059, 1063. Similarly, Civil Service Rule 13:10 provides:

> Only the following persons have a right of appeal to the Commission:
>
> (a) a state classified employee with **permanent status** who has been removed or subjected to one of the disciplinary actions listed in Rule 12.2(b).[10]
>
> (b) a state classified employee who has been **discriminated** against in any employment action or decision because of his political or religious beliefs, sex or race.
>
> (c) a state classified employee who has been adversely affected by a violation of any provision in the Civil Service Article or of any Civil Service Rule other than a rule in Chapter 10. [Emphasis added.]

Accordingly, a permanent status employee who is wrongfully terminated may obtain relief from the Civil Service Commission, including potential reinstatement with back pay. See **Varnado v. Dep't of Emp't & Training**, 95-0787 (La. App. 1st Cir. 6/28/96), 687 So.2d 1013, 1038, writ denied, 97-0312 (La. 3/27/97), 692 So.2d 394. The permanent status of a classified civil servant is recognized as a property right under the Louisiana Constitution and cannot be deprived without due process of law. **Bell v. Dep't of Health and Human Res.**, 483 So.2d 945, 949 (La. 1986).

While classified civil service employees who have achieved permanent status cannot be terminated without a lawful cause, there is no such guarantee for probationary status employees. See **Moore v. New Orleans Police Dep't**, 2001-0174 (La. App. 4th Cir. 3/7/02), 813 So.2d 507, 511. A probationary status employee may be terminated by the appointing authority at any time for virtually any reason. See Civil Service Rule 9.1(e); **Dep't of Pub. Safety & Corr. v. Thornton**, 625 So.2d 713, 715 (La. App. 1st Cir. 1993). This is because a

---

[10] The actions that constitute "discipline" are now listed in Civil Service Rule 12.3(a), which provides, "Discipline includes only: suspension without pay, reduction in pay, involuntary demotion[,] and dismissal."

13

probationary status employee has no property right in retaining his position. See Truax v. Dep't of Pub. Safety and Corr., 93-1574 (La. App. 1st Cir. 6/27/94), 640 So.2d 1389, 1391. Although permanent status employees in the classified civil service have the right to appeal disciplinary actions to the Civil Service Commission, an employee who has not obtained permanent status (*i.e.*, a probationary status employee), is not entitled to review of an appointing authority's action by the Civil Service Commission unless there is an allegation of discrimination. **Harness v. New Orleans Recreation Dev. Comm'n**, 2017-0107 (La. App. 4th Cir. 6/14/17), 222 So.3d 820, 822.[11]

However, because La. Const. Art. X, § 12(A) grants the Civil Service Commission the exclusive power and authority to hear and decide all removal and disciplinary cases, Louisiana district courts do not have jurisdiction over employment related disputes such as reinstatement, back pay, and merit increases asserted by classified civil service employees against the state. Claims for reinstatement and back pay by classified civil service employees—regardless of their status as permanent or probationary—must be brought before the Civil Service Commission because the Commission has exclusive jurisdiction of such matters. See La. Const. Art. X, § 12(A); see, e.g., **Goldsby v. State, Dep't of Corr.**, 2003-0343 (La. App. 1st Cir. 11/7/03), 861 So.2d 236, 238, writs denied, 2004-0328, 2004-0330 (La. 4/8/04), 870 So.2d 271, 271;[12] **Crockett v. State**

---

[11] The New Orleans Recreation Development Commission ("NORD") terminated a probationary status, classified civil service employee, who then appealed her termination to the Civil Service Commission. The NORD filed a motion for summary disposition arguing that as a probationary employee, the plaintiff did not have a right to appeal her termination, which the Civil Service Commission granted. **Harness**, 222 So.3d at 821. The employee appealed the Commission's decision. The appellate court affirmed the Civil Service Commission's decision, holding that the plaintiff had no right to appeal her termination because she was a probationary status classified civil service employee, and that only employees who have obtained permanent classified status are entitled to review of an appointing authority's action by the Civil Service Commission. **Id.** at 822.

[12] A former permanent status, classified civil servant with the Louisiana Department of Corrections ("DOC") filed suit under La. R.S. 23:967, Louisiana's whistleblower statute, alleging that he was harassed, discriminated against, and discharged in retaliation for reporting departmental violations. The trial court rendered judgment in favor of the employee following

**Through Dep't of Pub. Safety & Corr. (Louisiana State Penitentiary, Angola),** 97-2528 (La. App. 1st Cir. 11/6/98), 721 So.2d 1081, 1084;[13] **Varnado,** 687 So.2d at 1038.[14]

The thrust of the grant of exclusive jurisdiction over employment-related disputes between employers and employees in civil service is to preclude the district court from having concurrent jurisdiction with the Civil Service Commission over such disputes. **Johnson v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll.,** 45,105 (La. App. 2nd Cir. 3/3/10), 32 So.3d 1041, 1046. Furthermore, jurisprudence considering the jurisdiction of the Commission has recognized that the Civil Service Commission is not granted the authority of a

---

trial, awarding damages. The DOC appealed. **Goldsby,** 861 So.2d at 237-38. The court of appeal held that while the district court had jurisdiction to award damages and attorney's fees to the employee under La. R.S. 23:967, the Civil Service Commission had exclusive jurisdiction over claims relating to discipline and removal because Mr. Goldsby "was a classified state civil service employee." Thus, the trial court "could not order Mr. Goldsby's reinstatement or award him back pay, merit increases, etc." **Id.** at 238. The appellate court made no distinction regarding his classified civil servant status as either permanent or probationary.

[13] A classified civil service employee filed suit against his employer for damages for mental anguish allegedly caused when the employee, a correctional officer, was subjected to a "visual body cavity search and body cavity search" conducted by fellow employees, allegedly in violation of departmental regulations. **Crockett,** 721 So.2d at 1082. His employer, the Department of Public Safety and Corrections ("DPSC"), raised an objection of lack of subject matter jurisdiction, arguing that the Civil Service Commission had the exclusive power to decide the employee's claim. **Id.** On appeal, the court held that while the Civil Service Commission had exclusive jurisdiction over employer-employee related disputes, the Commission did not have subject matter jurisdiction over tort cases. **Id.** at 1083. The appellate court found that the allegations of the employee's petition did not establish that his case involved disciplinary action taken against him or his removal from office; thus, the trial court improperly granted DPSC's objection of lack of subject matter jurisdiction. **Id.** at 1084. The court made no distinction regarding the employee's classified civil servant status as either permanent or probationary.

[14] Administrative hearing officers with the Office of Workers' Compensation ("OWC") filed an action for declaratory judgment and injunctive relief against the OWC, challenging a statute prohibiting them from practicing workers' compensation law while employed as hearing officers. The hearing officers also raised 42 U.S.C. § 1983 allegations that searches of their offices were unconstitutional. Following trial, the court awarded compensatory damages, attorney's fees, and litigation expenses, but refused to award punitive damages or an order of reinstatement. **Varnado,** 687 So.2d at 1019-22. Regarding reinstatement of the hearing officers to their former positions, the appellate court held:

> In the instant case, it is clear that [the hearing officers] were classified, civil service employees. The law of this state is clear that any such claims for reinstatement must be brought before the Civil Service Commission in that the Commission has exclusive jurisdiction of such matters. Therefore, we find that the trial court properly refused to reinstate [the hearing officers].

**Id.** at 1038. The court made no distinction regarding the hearing officers' classified civil servant status as either permanent or probationary.

15

court and is unable to render money judgments and enforce the payment thereof. **Holliday v. State through Louisiana Workforce Comm'n, Office of Worker's Comp.**, 2017-0013 (La. App. 1st Cir. 6/14/17), 224 So.3d 380, 382. That is, the Civil Service Commission has no subject matter jurisdiction over tort cases and cannot award general monetary damages. **Johnson**, 32 So.3d 1046.

The ATC hired Mr. Kling for an Agent 4 position on September 30, 2010. Thus, pursuant to Civil Service Rule 4.1(b), he was a classified civil service employee. However, Mr. Kling was required to serve at least one year of probation (*i.e.*, "working test" period) before being eligible to attain permanent status. See Civil Service Rule 9.1. The ATC separated Mr. Kling from his employment on March 30, 2011. Thus, at all times relevant hereto, Mr. Kling was a probationary status employee within the classified civil service. Accordingly, Mr. Kling was not entitled to review of his termination by the Civil Service Commission as a probationary status employee absent an allegation of discrimination; however, the Civil Service Commission retained jurisdiction over Mr. Kling's claims for back pay and reinstatement. See **Harness**, 222 So.3d at 822. Therefore, it was legal error for the district court to award Mr. Kling $243,045.00 for lost wages, since that authority lies exclusively within the jurisdiction of the Civil Service Commission. Accordingly, we reverse the portion of the judgment awarding Mr. Kling $243,045.00 for lost wages.

**Assignment of Error Nos. 4 and 5: General Damages**

In addition to lost wages, the jury awarded $150,000.00 to Mr. Kling in compensatory damages on his free speech retaliation claim: $75,000.00 for mental anguish and distress, and $75,000.00 for loss of enjoyment of life. On appeal, the Department asserts that the evidence presented to the jury was insufficient to find Mr. Kling suffered any such damages. The Department contends that Mr. Kling's mental anguish and distress and loss of enjoyment of life damages were caused by

16

the litigation process, not by the actual termination of his employment with the ATC.

"General damages" involve mental or physical pain or suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of lifestyle that cannot be measured definitively in terms of money. **Boudreaux v. Farmer**, 604 So.2d 641, 654 (La. App. 1st Cir.), writs denied, 605 So.2d 1373, 1374 (La. 1992). The primary objective of general damages is to restore the party in as near a fashion as possible to the state he was in at the time immediately preceding injury. **Daigle v. U.S. Fidelity and Guar. Ins. Co.**, 94-0304 (La. App. 1st Cir. 5/5/95), 655 So.2d 431, 437. The factors to be considered in assessing quantum of damages for pain and suffering are severity and duration. **Thibodeaux v. USAA Cas. Ins. Co.**, 93-2238 (La. App. 1st Cir. 11/10/94), 647 So.2d 351, 357.

Thus, in determining the amount of general damages to be awarded, the jury, as the trier of fact, had to determine whether Mr. Kling met his burden of proof, by a preponderance of the evidence, that he suffered mental anguish and distress and loss of enjoyment of life. **Schwartzberg v. Guillory**, 2016-0753 (La. App. 1st Cir. 2/17/17), 213 So.3d 1266, 1271. Vast discretion is accorded to the trier of fact in fixing general damage awards. See La. C.C. art. 2324.1; **Cheramie v. Horst**, 93-1168 (La. App. 1st Cir. 5/20/94), 637 So.2d 720, 723. The discretion vested in the trier of fact is "great," even vast, so that an appellate court should rarely disturb an award of general damages. **Youn v. Maritime Overseas Corp.**, 623 So.2d 1257, 1261 (La. 1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).

The role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. **Wainwright v. Fontenot**, 2000-0492 (La.

17

10/17/00), 774 So.2d 70, 74. Before an appellate court can disturb the quantum of an award, the record must clearly reveal that the jury abused its discretion. In order to make this determination, the reviewing court looks first to the individual circumstances of the injured plaintiff. **Theriot v. Allstate Ins. Co.**, 625 So.2d 1337, 1340 (La. 1993). Reasonable persons frequently disagree about the measure of general damages in a particular case. **Youn**, 623 So.2d at 1261. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or decrease the award. **Id.** Only after analysis of the facts and circumstances peculiar to the particular case and plaintiff may an appellate court conclude that the award is inadequate. See **Theriot**, 625 So.2d at 1340. We therefore must review the particular circumstances of Mr. Kling's alleged injuries.

At trial, Mr. Kling testified to the great degree of mental anguish and suffering he experienced as a result of the termination of his employment with the ATC. Mr. Kling stated that as a result of his termination, he lost all self-confidence and became depressed regarding any future job prospects, given his age (sixty-five years old at the time of trial). Mr. Kling testified that he had been working since he was fourteen years old and now has significant concerns about his ability to support his family. Mr. Kling testified that he suffered, and continues to suffer, from depression, anxiety, loss of sleep, and high blood pressure. As a result of his emotional distress, Mr. Kling had to seek medical care and has been prescribed anti-anxiety medication. Mr. Kling testified that he also suffered from a loss of enjoyment of life. Prior to his termination, Mr. Kling stated that he used to have friends, go out, play golf, and watch sporting events, but that after he was fired, he no longer has any hobbies and does not "really do anything other than things that need to be done around the house" for his family.

Mr. Kling's wife, Tammy, corroborated his testimony. She stated that prior to his termination by ATC, Mr. Kling loved his job in law enforcement and was "proud to be part of the ATC group, to be part of any law enforcement group." After his termination, Mrs. Kling testified that Mr. Kling was embarrassed, ashamed, and "shattered" by that the fact that he was unemployed and that she had to work to support their family. Mrs. Kling also testified that her husband suffered from depression and has trouble sleeping. Mrs. Kling stated that her husband had no anxiety whatsoever prior to his termination and that he has had to seek medical help and now takes prescription medication for his anxiety. Mrs. Kling testified that since his termination, her husband no longer goes out, talks with neighbors, helps people, or engages in any activities with her son, such as woodworking.

The Department argues that Mr. Kling's testimony revealed that the mental anguish and suffering he has experience was due to the stress of litigation, not his actual termination. For example, Mr. Kling testified that "every time I get a statement from my attorney, my emotional distress goes up." Mr. Kling also stated:

> What it does, it brings back every bit of memory of the entire thing every time that that comes up, every time I get a, you know, something in the mail, email from them, every time I get a bill from them. It's always there.

When asked whether he ever said "the lawsuit was [the] primary cause" of his emotional distress, Mr. Kling testified:

> I didn't think ... I said that. And if I did, I misspoke. I don't -- I didn't mean that that's what that was if I did say it. I didn't mean it like that. I meant that, it's constant, it's a constant thing, I mean, you guys know. It's all the time. It's every motion, everything that's sent to you, email, every phone call, you get a phone call and you look and it's the law firm you know. And it's, like, damn, you know. Wherever you were, it just jolts back. I mean, I know you have to do it. I'm just saying, it's not the -- it's the whole process, what started it, you know. I wouldn't be here if it hadn't started.

19

We recognize that litigation-induced stress is not ordinarily recoverable as an element of damages. **Zimmerman v. Direct Fed. Credit Union**, 262 F.3d 70, 79 (1st Cir. 2001). However, considering the totality of the evidence presented by Mr. Kling, the testimony revealed that his emotional distress and loss of enjoyment of life were caused by his termination with the ATC. Our role is not to decide what we consider to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. **Wainwright**, 774 So.2d at 74. We therefore conclude that the jury's general damage award does not constitute an abuse of the "much discretion" of the trier of fact. Accordingly, the jury's award of general damages to Mr. Kling is affirmed. These assignments of error are without merit.

## Answer to the Appeal

Mr. Kling filed an answer to the appeal pursuant to La. C.C.P. art. 2133. First, Mr. Kling seeks a reversal of the district court's January 16, 2018 judgment to the extent it denied his claim for reinstatement. As discussed herein, the Civil Service Commission has exclusive jurisdiction over Mr. Kling's claims for back pay and reinstatement. See **Harness**, 222 So.3d at 822. Mr. Kling's request to reverse the district court's denial of his claim for reinstatement is denied.

Next, Mr. Kling seeks a reversal of the district court's January 16, 2018 judgment to the extent it denied his claim for legal interest at six percent (6.00%) per annum on the damages award in accordance with La. R.S. 13:5112(C). Louisiana Revised Statutes 13:5112(C), regarding suits against the state or political subdivision, provides:

> Legal interest on any claim for personal injury or wrongful death shall accrue at **six percent per annum from the date service is requested following judicial demand until the judgment thereon is signed by the trial judge** in accordance with Code of Civil Procedure Article 1911. **Legal interest accruing subsequent to the signing of the judgment shall be at the rate fixed by R.S. 9:3500.** [Emphasis added.]

Mr. Kling successfully raised a claim for free speech retaliation under La. Const. Art. I, § 7, and was awarded mental anguish and distress and loss of enjoyment of life compensatory damages; accordingly, La. R.S. 13:5112(C) applies. The district court erred in failing to apply La. R.S. 13:5112(C) to Mr. Kling's claim. Therefore, we amend the January 16, 2018 judgment to decree that legal interest on Mr. Kling's compensatory damages award in the amount of $150,000.00 accrues at the rate of six percent (6.00%) per annum from May 26, 2011 (the date of Mr. Kling's request for service following judicial demand) until January 16, 2018, the date the district court signed the judgment. Legal interest accruing subsequent to January 16, 2018, accrues at the rate of four percent (4.00%) per annum in accordance with La. R.S. 9:3500.[15]  See La. R.S. 13:5112(C); La. R.S. 9:3500. Therefore, Mr. Kling's request for six percent (6.00%) per annum legal interest is granted in part.

Finally, Mr. Kling seeks an assessment of district court and appellate court costs to the Department. The district court's January 16, 2018 judgment assessed district court costs in the amount of $9,538.06 in favor of Mr. Kling and against the Department. Thus, Mr. Kling's request as to the assessment of district court costs is moot. As to appellate court courts, we assess costs of this appeal against the Department. Mr. Kling's request as to an assessment of appellate court costs is therefore granted.

---

[15] Louisiana Revised Statutes 9:3500(B)(1) provides that legal interest is fixed at the rate fixed in La. R.S. 13:4202. Pursuant to authority granted by La. R.S. 13:4202(B)(1), as amended by 2001 La. Acts, No. 841, the Louisiana Commissioner of Financial Institutions has determined that the judicial rate of interest for calendar year 2011 will be four percent (4.00%) per annum. Louisiana Revised Statutes 13:4202(B), as amended by 2001 La. Acts, No. 841, requires the Louisiana Commissioner of Financial Institutions to determine the judicial interest rate for the calendar year following the calculation date. The commissioner has determined the judicial interest rate for the calendar year 2011 in accordance with La. R.S. 13:4202(B)(1). The commissioner ascertained that on October 1, 2010, the approved discount rate of the Federal Reserve Board of Governors was three-quarters of one percent (0.75%). Louisiana Revised Statutes 13:4202(B)(1) mandates that on and after January 1, 2002, the judicial interest rate shall be three and one-quarter percentage points above the Federal Reserve Board of Governors-approved discount rate on October 1, 2010. Thus, the effective judicial interest rate for the calendar year 2011 shall be four percent (4.00%) per annum.

**DECREE**

Based on the foregoing, we reverse the portion of the district court's January 16, 2018 judgment awarding the plaintiff/appellee, Randall Kling, $243,045.00 for lost wages. We amend the January 16, 2018 judgment to decree that legal interest on Mr. Kling's compensatory damages award in the amount of $150,000.00 accrues at the rate of six percent (6.00%) per annum from May 26, 2011, until January 16, 2018, in accordance with La. R.S. 13:5112(C). Legal interest accruing subsequent to January 16, 2018, accrues at the rate of four percent (4.00%) per annum in accordance with La. R.S. 13:5112(C) and La. R.S. 9:3500. The judgment is affirmed is all other respects.

The answer to the appeal filed by the plaintiff/appellee, Randall Kling, is granted in part, and denied in part.

All costs of this appeal, in the amount of $12,937.50, are assessed to the defendant/appellant, the Louisiana Department of Revenue, Office of Alcohol and Tobacco Control.

**REVERSED IN PART, AMENDED IN PART, AFFIRMED AS AMENDED; ANSWER TO THE APPEAL GRANTED IN PART, DENIED IN PART.**